65 A.3d 178

**James Howard McCORMICK, III**

**v.**

**STATE of Maryland.**

**No. 1855, Sept. Term, 2011.**

Court of Special Appeals of Maryland.

March 21, 2013.

Reconsideration Denied June 3, 2013.

262

Claudia A. Cortese (Paul B. DeWolfe, Public Defender, on the brief), Baltimore, MD, for Appellant.

Jessica V. Carter (Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, MD, for Appellee.

Panel: WOODWARD, GRAEFF, IRMA S. RAKER (Retired, specially assigned), JJ.

RAKER, J.

James McCormick, appellant, was convicted in the Circuit Court for Anne Arundel County of driving while impaired by alcohol. In this appeal he presents one issue for our review: whether the trial court erred in denying his motion to suppress the blood alcohol test because the police lacked probable

cause to arrest him. We shall hold that the trial court did not err and affirm.

## I.

Appellant was charged in the District Court of Maryland, sitting in Anne Arundel County, with driving under the influence of alcohol, driving under the influence of alcohol per se, driving while impaired by alcohol, negligent driving, speeding, and driving in violation of a restricted license requirement. Following his prayer for a jury trial, the case was transferred for trial to the Circuit Court for Anne Arundel County.

Appellant filed a pre-trial motion to suppress, and the trial court held a hearing on the motion.[1] On August 26, 2010, as appellant drove along Route 50 in the area of Bay Dale Drive, Officer Davies stopped appellant for driving eighty-eight miles per hour in a fifty-five mile per hour zone. When the officer approached the driver's side of appellant's vehicle, he detected a strong odor of alcohol, noted appellant's bloodshot eyes, and observed that appellant's speech was slurred. Appellant admitted to having consumed two alcoholic beverages that evening. Officer Davies noted that appellant's license contained a "J" alcohol restriction.[2]

Officer Davies asked appellant to submit to a field sobriety test. From this point forward, appellant was uncooperative. Before explaining the test to appellant, appellant told Officer Davies that a few weeks ago he was attacked and that, as a result of that attack, he suffered a brain hemorrhage. As Officer Davies attempted to explain the field sobriety test, appellant interrupted Officer Davies repeatedly.

---

1. At the hearing, the State introduced a video showing the police stop and arrest of appellant. We were not provided with the videotape.

2. Maryland Code (1977, Repl.Vol.2012) § 16–113(a)(1)(ii) of the Transportation Article grants the Motor Vehicle Administration the ability to "impose on the licensee: [a]n alcohol restriction which prohibits the licensee from driving or attempting to drive a motor vehicle while having alcohol in the licensee's blood."

Officer Davies told appellant that if he did not submit to the field sobriety test he would arrest him. Appellant refused the test, and in explaining why he was arresting appellant, Officer Davies stated, "I don't know how much you've had to drink. At that point I got to lock you up. You been drinking, you been driving.... You have a[n alcohol] restriction on your license.... You're not allowed to drink and drive." At the police station after his arrest, appellant submitted voluntarily to a blood alcohol concentration (BAC) test, which indicated that appellant had a BAC of 0.11.

During the defense's closing argument on the motion to suppress, the following colloquy occurred:

"[DEFENSE COUNSEL:] The Constitutional issue is at the time of arrest can the State demonstrate probable cause to believe that Mr. McCormick was driving while impaired by alcohol.

\* \* \*

The third thing the State needs to demonstrate in order to support probable cause is impaired coordination. And that would be the reason for, in the normal case, the heel to toe test or the leg lift test.

[THE COURT:] You say that that is a requirement—

[DEFENSE COUNSEL:] Yes.

[THE COURT:] —for probable cause?

[DEFENSE COUNSEL:] Yes.

[THE COURT:] Well—

[DEFENSE COUNSEL:] Because—

[THE COURT:] —that's a novel argument because if I follow that argument to its conclusion any time someone refuses field tests they should simply be—

[DEFENSE COUNSEL:] No—

[THE COURT:] —cut loose.

[DEFENSE COUNSEL:] Well, I am about to answer that for you.

[THE COURT:] Go ahead.

[DEFENSE COUNSEL:] Because there are other possible observations that don't rely upon field sobriety tests. We've heard plenty of times where officers talk about a driver being confused and unable to produce a license and a registration. We've seen reports before where the officer standing outside the car and is able to see the driver's driver's license in the wallet but the driver thumbs right through it, indicating a lack of concentration. We've heard plenty of times where the driver has trouble exiting the vehicle. He needs to use the car door for support. We've heard plenty of reports where the officer says the driver was swaying or staggering while standing.

There are other observations that could have been made that showed lack of—lack of coordination or lack of ordinary coordination. It doesn't have to be the field sobriety tests. Otherwise the Court would argue—or the Court's position would be that drivers are required to take the field sobriety tests.

[THE COURT:] Which they're not.

[DEFENSE COUNSEL:] And they're not. But the field sobriety tests are not the only measure of impaired coordination. Not only do we have no testimony from Officer Davies about other non-formal observations of impairment. We have a chance to see Mr. McCormick there. We see him exit the vehicle without difficulty. We see him walk from the driver's door to the rear of the car. We see him sit down, stand up, sit down, stand up on the bumper without any impairment at all. We see Mr. McCormick walk over to the grass and throw gum and then walk back and sit back down again without any staggering or swaying, without needing any support. So, simply put, there's just no other—there's no observations of impaired coordination. And the probable cause goes to the crime. And the crime is as I defined it. And that evidence of impaired coordination is the gravamen of the crime.

If you have a beer after work and drive home and the officer stops you for speeding the odor of alcoholic beverage is going to be strong on your breath because it relates to

the time you drank the beer. It's going to be strong because you just had it. But that doesn't mean that you're intoxicated. And before the officer could arrest you he would have to see some impaired coordination."

The Court denied appellant's motion to suppress, explaining as follows:

"[THE COURT:] I wasn't on the road that night at one o'clock. But, you know, citizens were out on the highway. The officer saw someone going [eighty-eight] miles per hour. He certainly had justification stopping that vehicle. And then everything at that point progresses on a step by step basis. The officer did everything—this is a classic DWI stop in my opinion.

I mean if I were to agree with [defense counsel]'s argument that there had to be some demonstrative signs of physical impairment anyone, as I indicated, anyone who avoided a field sobriety test would not give the officer that information. But ... I think that the Defendant probably did himself a disservice by not cooperating on the side of the road and going through those tests.

If his statement is true, that he only had two drinks, maybe at the conclusion of the field tests this officer, based on his earlier testimony under oath, may have just said, okay, I am going to give you a ticket for speeding, go home and see you later.

But we've got so many things here. We've got a delay in his responses, which counters what [defense counsel] said. I saw, and a picture is worth a thousand words, he didn't follow the instructions on the gum. The officer was very patient with him. It got to the point where they were a little confrontational to one another regarding some of the responses. But it was because the Defendant did not really respond to the requests of the officer. Not the reverse. The officer was very patient.

We have an admission that he was—that he had drank. We have the odor, a strong odor of alcohol. You've got blood-

shot eyes. I mean I just can't imagine this officer doing anything but what he did."

Appellant waived a jury trial and elected to proceed on a not guilty, agreed statement of facts on the driving while impaired charge only. The court found appellant guilty of driving while impaired. The court noted appellant's BAC after his arrest coupled with Officer Davies's observations at the time of arrest as evidence proving beyond a reasonable doubt that appellant's normal condition was impaired. The trial court sentenced appellant to a term of incarceration of one year, all but eight days suspended, followed by two years probation.

## II.

Appellant argues before this Court that the trial court erred by denying his motion to suppress the BAC test following what he alleges is an unlawful arrest. More specifically, appellant concedes that Officer Davies had a reasonable basis and articulable facts from which he could request appellant take a field sobriety test, but, because there was no evidence that appellant's normal coordination was impaired, he did not have probable cause to arrest appellant and that the officer had no choice but to let appellant proceed on his way.

The State argues that the trial court denied appellant's motion to suppress properly. The State argues that appellant's bloodshot eyes, slurred speech and confrontational demeanor as well as a strong odor of alcohol emanating from him demonstrate that appellant's normal condition was impaired by alcohol. In the alternative, the State argues that appellant's refusal to submit to the field sobriety test connotes consciousness of guilt from which the trial court could have found probable cause to support appellant's arrest.

## III.

The scope of our review of a trial court's ruling on a suppression motion is limited ordinarily to the record made at the suppression hearing. *Blasi v. State*, 167 Md.App. 483, 494, 893 A.2d 1152, 1158 (2006). We view the evidence and inferences that may be reasonably drawn from the evidence in the

light most favorable to the prevailing party on the motion, and extend great deference to the motion court's findings of fact, unless clearly erroneous. *State v. Rucker,* 374 Md. 199, 207, 821 A.2d 439, 444 (2003); *Allen v. State,* 197 Md.App. 308, 316, 13 A.3d 801, 805 (2011). We make our own independent constitutional appraisal of the law as it applies to the facts of the case. *Alston v. State,* 159 Md.App. 253, 262, 858 A.2d 1100, 1105 (2004).

▬▬▬ The Fourth Amendment to the United States Constitution, applicable to the States through the Fourteenth Amendment states, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV; *Mapp v. Ohio,* 367 U.S. 643, 655, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081 (1961). An officer may arrest an individual in a public place without a warrant for a misdemeanor committed in his presence if he has probable cause to believe that the individual has committed an offense. *Longshore v. State,* 399 Md. 486, 501, 924 A.2d 1129, 1137 (2007). An arrest must be supported by probable cause "sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964); *see also Johnson v. State,* 356 Md. 498, 504, 740 A.2d 615, 618 (1999). An officer has probable cause to arrest where "the facts and circumstances within the officer['s] knowledge and of which [he] had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Brinegar v. United States,* 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949) (internal quotations omitted); *Longshore,* 399 Md. at 501, 924 A.2d at 1137. To determine whether probable cause exists, "the reviewing court necessarily must relate the information known to the officer to the elements of the offense that the officer believed was being or had been committed." *Belote v. State,* 199 Md.App. 46, 54, 20 A.3d 143, 148 (2011).

 Although not noted by the suppression court as a basis for the arrest, and not argued by the State, we hold that Officer Davies had a sufficient basis for arresting appellant for driving in violation of an alcohol restriction. Maryland Code (1977, Repl.Vol.2012) § 16–113(j) of the Transportation Article[3] states that "[a]n individual may not drive or attempt to drive a motor vehicle with alcohol in the individual's blood in violation of a restriction." Section 27–101(c)(10) states that an individual convicted of violating § 16–113(j) may be sentenced to a term of incarceration of up to two months or pay $500 or both. Appellant admitted to the officer that he had two drinks before driving. Officer Davies observed the alcohol restriction on appellant's license and noticed a strong odor of alcohol emanating from appellant.

 The test for assessing probable cause is an objective one. An officer can arrest a person subjectively believing that the individual had committed one offense when the individual had committed a completely different offense. In other words, an officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Devenpeck v. Alford,* 543 U.S. 146, 153, 125 S.Ct. 588, 594, 160 L.Ed.2d 537 (2004); *see also Whren v. United States,* 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) (holding that an officer's subjective intention in making an arrest has no bearing on a probable cause determination if, before the stop, the officer observed the individual committing an infraction); *Brown v. State,* 171 Md.App. 489, 910 A.2d 571 (2006) (holding that the arresting officer's subjective intention for stopping the vehicle at the time the officer initiated the stop is irrelevant to Fourth Amendment analysis); *Cox v. State,* 161 Md.App. 654, 672, 871 A.2d 647, 657 (2005) (stating that "the legal justification offered for the officer's action does not invalidate the action

---

**3.** Unless otherwise indicated, all subsequent statutory references herein shall be to the Transportation Article of the Maryland Code (1977, Repl.Vol.2012).

taken so long as the circumstances, viewed objectively, justify that action"); *Whitehead v. State,* 116 Md.App. 497, 500, 698 A.2d 1115, 1117 (1997) (stating that "as long as the police *could* have stopped the driver for a traffic violation, it is inconsequential that the police actually stopped the driver to investigate another offense"). An officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Devenpeck,* 543 U.S. at 153, 125 S.Ct. at 594. The officer's legal justification for the arrest is not the *sine quo non* of probable cause— the officer's actions are not invalidated so long as the facts and circumstances viewed objectively, support the arrest. *See Brown v. State,* 171 Md.App. at 523, 910 A.2d at 591.

It is an incarcerable offense to drive on an alcohol restricted license with alcohol in the blood. Section 27–101(c)(10). Because Officer Davies observed an alcohol restriction on appellant's license, which he is entitled to assume was placed properly on the license, and because Officer Davies smelled alcohol on appellant, and appellant admitted that he had been drinking, Officer Davies had probable cause to arrest appellant. It makes no difference in assessing probable cause whether Officer Davies charged appellant with driving on a restricted license. *Brown,* 171 Md.App. at 523, 910 A.2d at 591. In fact, the officer told appellant he was arresting him for drinking and driving on an alcohol restricted license.

The State argues that Officer Davies had probable cause to arrest appellant for driving while impaired. During the suppression motion, Officer Davies testified that appellant had a strong odor of alcohol, bloodshot eyes, and slurred speech,[4] admitted that he had a few alcoholic beverages, and was traveling at an excessive speed of eighty-eight miles per hour in a fifty-five mile per hour zone.[5] While we think these facts

---

4. Appellant contests the slurred speech and points out that the suppression court, in finding probable cause, did not mention the slurred speech.

5. We note that the Georgia Court of Appeals held that these facts alone establish probable cause to arrest an individual for driving while

alone might support probable cause to arrest for driving under the influence of alcohol, we leave that determination for another day. Alternatively, the State argues that appellant's refusal to take the field sobriety test indicated consciousness of guilt and, along with the other factors, provided probable cause to arrest. We leave for another day also whether a person's refusal to submit to a field sobriety test under circumstances herein is admissible in evidence as consciousness of guilt in the probable cause equation.[6]

---

impaired. *Cann–Hanson v. State*, 223 Ga.App. 690, 478 S.E.2d 460 (1996) (holding that "[e]ven in the absence of the field sobriety tests, the officer's observation that Cann–Hanson had bloodshot, watery eyes and exuded an odor of alcohol was sufficient to show probable cause to arrest him for driving under the influence"). The Georgia driving under the influence statute is similar, although not exact, to the Maryland statute. In Georgia, a person may not drive "under the influence of alcohol to the extent that it is less safe for the person to drive." GA.CODE ANN. § 40–6–391(a)(1). A condition in which it is "less safe for a person to drive" is akin to a person whose "normal condition is impaired."

6. Although many of our sister states admit such evidence as consciousness of guilt and substantive evidence of guilt, it remains an open question in Maryland whether refusal to submit to a field sobriety test is admissible as evidence of guilt. *See Johnson v. State*, 337 Ark. 196, 987 S.W.2d 694, 698 (1999) (stating that refusal to take a breath or field sobriety test indicates consciousness of guilt); *State v. Taylor*, 648 So.2d 701, 704 (Fla.1995) (holding that a defendant's refusal to submit to a field sobriety test is admissible because it is relevant to the defendant's consciousness of guilt); *Hoffman v. State*, 275 Ga.App. 356, 620 S.E.2d 598, 600 (2005) (refusal to submit to a field sobriety test is admissible as circumstantial evidence to prove the driver was impaired); *State v. Mellett*, 642 N.W.2d 779, 788 (Minn.Ct.App.2002) (holding that the trial court did not abuse its discretion in admitting the defendant's refusal to take a field sobriety test); *New Mexico v. Sanchez*, 131 N.M. 355, 36 P.3d 446, 449 (N.M.Ct.App.2001) (stating that the State can use the driver's refusal to take a field sobriety test as circumstantial evidence of consciousness of guilt); *State v. Filchock*, 166 Ohio App.3d 611, 852 N.E.2d 759, 768 (2006) (stating that an arresting officer may consider the driver's refusal to submit to a field sobriety test in determining whether probable cause to arrest exists); *Jones v. Commonwealth*, 279 Va. 52, 688 S.E.2d 269, 272–73 (2010) (holding that a driver's refusal to submit to a field sobriety test is circumstantial evidence "tending to show the driver's awareness that his consumption of alcohol would affect his ability to perform such tests" and that an officer may consider the driver's refusal in his assessment of probable cause); *see also State v. Ferm*, 94 Hawai'i 17, 7 P.3d 193, 205–06 (Haw.Ct.App.2000) (holding

JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.

that the admissibility of a defendant's refusal to take a field sobriety test did not violate the defendant's Fifth Amendment right to refrain from incriminating himself); *State v. Hoenscheid*, 374 N.W.2d 128, 129–30 (S.D.1985) (same); *Seattle v. Stalsbroten*, 138 Wash.2d 227, 978 P.2d 1059, 1061 (1999) (same).

In Maryland, the statutes refer to a preliminary breath test and a chemical test. Maryland Code (1977, Repl.Vol.2012) § 16–205.2 of the Transportation Article; Maryland Code (1974, Repl.Vol.2006) §§ 10–302 *et seq.* of the Courts and Judicial Proceedings Article. The State may not use as evidence a refusal to take a preliminary breath test in any court action, although the results of such test may be used by a defendant in a court action. Maryland Code (1977, Repl.Vol.2012) § 16–205.2(c) of the Transportation Article. Chemical test requirements are set out in Maryland Code (1974, Repl.Vol.2006) § 10–303 of the Courts and Judicial Proceedings Article. In 1986, the General Assembly amended the Courts and Judicial Proceedings Article to permit the admission of a refusal to take a chemical test but did not permit juries to use the refusal to take a chemical test as a factor in deciding the defendant's guilt. *Krauss v. State*, 322 Md. 376, 378–79, 587 A.2d 1102, 1103–04 (1991). In 2001, the General Assembly permitted juries to decide what weight, if any, to give the defendant's refusal to take a chemical test in determining guilt or innocence. Maryland Code (1974, Repl.Vol.2006) § 10–309(a)(2) of the Courts and Judicial Proceedings Article; *Wyatt v. State*, 149 Md.App. 554, 562, 817 A.2d 901, 905–06 (2003). Today, trial courts instruct jurors in drunk driving cases that they are permitted, if they so choose, to weigh the defendant's refusal to take a chemical test when determining guilt or innocence. The Maryland Criminal Pattern Jury Instructions state as follows:

"You have heard evidence that the defendant refused to submit to a test to determine his alcohol level. You must first decide whether the defendant refused to submit to a test. If you find that the defendant refused to submit to a test, you must then decide whether that refusal is evidence of guilt. Refusal to submit to a test may be based on reasons that are consistent with innocence or other reasons that are consistent with guilt. In order to decide whether the defendant refused to submit to a test and what, if any, weight to give the refusal, you should consider all of the evidence in the case."

Maryland State Bar Ass'n, MARYLAND CRIMINAL PATTERN JURY INSTRUCTIONS 4:10:5 (2nd ed. 2012).