**REPORTED**

IN THE COURT OF SPECIAL APPEALS
OF MARYLAND

No. 1715

September Term, 2014

TODD HARDING

v.

STATE OF MARYLAND

Zarnoch,
Leahy,
Moylan, Charles E., Jr.
 (Retired, Specially Assigned),

JJ.

Opinion by Moylan, J.

Filed: May 29, 2015

The appellant, Todd Harding, was convicted in the Circuit Court for Baltimore City by a jury, presided over by Judge Videtta Brown, of 1) driving under the influence of alcohol, 2) driving with a suspended license, and 3) refusing to take a breath alcohol test. On this appeal, the appellant raises the single contention that the evidence was not legally sufficient to permit Judge Brown to submit the case to the jury.

To cut to the chase, the appellant does not challenge the adequacy of the State's evidence to show 1) that he was under the influence of alcohol when he was arrested by the police at 1:20 a.m. on October 21, 2013; 2) that at that time, his driver's license was suspended; and 3) that, when taken to the station house, he refused to submit to a breath alcohol test. The legal sufficiency battle before us focuses exclusively on the narrow issue of whether the appellant had actually been driving the 1965 Chevy pickup truck in which Baltimore City firefighters found him as they responded to a call of "a vehicle accident and report of people trapped" in a truck on Inverness Avenue.

## Driving: What and When?

The driving while under the influence statute of which the appellant was convicted is Maryland Code, Transportation Article, §21-902(a), which provides:

> (a) <u>Driving while under the influence of alcohol</u>:
>> (1) A person may not drive or attempt to drive any vehicle while under the influence of alcohol.
>>
>> (2) A person may not drive or attempt to drive any vehicle while that person is under the influence of alcohol per se.
>>
>> (3) A person may not violate paragraph (1) or (2) of this subsection while transporting a minor.

§11-114 also provides a definition of the verb "drive."

> "Drive" means to drive, operate, or be in actual physical control of a vehicle, including the exercise of control over or the steering of a vehicle being towed by a motor vehicle.

Proof of the crime, moreover, may consist not only of evidence that shows that the defendant is, when observed by the police or other witnesses, driving in the present tense but also may arise from a permitted inference that the defendant was guilty of driving under the influence in the past tense. How, the inquiry may go, did the defendant get to the place where he is now observed? In the words of <u>Owens v. State</u>, 93 Md. App. 162, 163, 611 A.2d 1043 (1992):

> "This appeal presents us with a small gem of a problem from the borderland of legal sufficiency."

### The Version of the Evidence
### Most Favorable to the State

When the emergency call went out at approximately 1:20 a.m. that a vehicular accident had occurred and it appeared that one or more persons might be trapped in the crashed vehicle, Baltimore City firefighters were the first emergency personnel to arrive on the scene. The Baltimore City Police Department and an ambulance arrived shortly thereafter. Firefighter Jeffery Darby observed what clearly appeared to be a crash scene. An older model Chevy pickup truck had jumped a curb and crossed the sidewalk and had "nudged into ... bushes" that bordered a fence on the far side of the sidewalk.

The vehicle itself was in some distress. Firefighter Darby observed that there was "a

- 2 -

little bit of ... a white smoke steam coming from the vehicle," as if it were "overheating." Firefighter Matthew Blair testified that the "white smoke" was coming from the "engine compartment." When Police Officer Christopher Wesolowski arrived on the scene, the pickup truck was still smoking. Police Officer Tyrone Thomas observed that the truck was "partially up on the curb in the bushes" and radiator fluid was "coming from under the truck going around the curbside, going downhill." The truck was still running.

> "[I]t appeared that the truck was still running and it had no type of ignition or anything to turn the truck off. So I don't recall how we actually got the truck turned off, but it was no type of ignition. No sign of, like, a key hole or anything."

(Emphasis supplied).

From the raw physics of the event alone, it is clear that the pickup truck had been moving and had just come to a sudden and abrupt stop as it bounced over the curb and into the bushes just minutes before the first emergency responders arrived on the scene.

Turning our attention to the appellant, we note that as Firefighter Blair approached the pickup truck, he found the appellant "sitting ... like at the driver's wheel, slumped over ... into the bench [the seat]." He testified that the appellant "seemed out of it" and "wasn't responsive," was intoxicated. Firefighter Darby described the appellant as "slouched over in the front seat," "laying onto the bench seat," apparently sleeping. Firefighter Benjamin Filer described the appellant's head as "laying up against the driver's door." The appellant woke up when Firefighter Blair rubbed his chest. At that point the firefighters left the scene because it was apparent that no one was "trapped" and the police and the ambulance were

- 3 -

then on the scene. At that point, the appellant got out of the pickup truck and started walking away from it.

Officer Wesolowski first observed the appellant "staggering down the sidewalk going back and forth" toward his house, which was on the same block of Inverness Avenue where the truck was then sitting. It seems that the appellant had almost reached home when he lost control of the pickup truck. When the officer asked the appellant if he "was the driver of the vehicle," "the appellant didn't confirm or deny that he was driving." The officer described the appellant's demeanor:

> "He was swearing. He was laughing at times. He was aggressive, then he was calm. He was changing his demeanor constantly. I immediately smelled an alcoholic beverage when I began talking to him."

Officer Wesolowski tried to conduct a field sobriety test, but the appellant refused to cooperate. The officer then arrested him "on suspicion of a DUI [Driving Under the Influence]." The appellant was thereafter transported to the police station where he refused to submit to a breath alcohol test.

When Officer Thomas checked with dispatch to learn the name of the pickup truck's owner, he was told that it was Tammy Harman, who happened to be the appellant's girlfriend. The officer called her to have her retrieve the truck. It was "well over an hour" later that she arrived at the scene. At first "the truck wouldn't start or go in reverse." Officer Thomas and the man who had come to the scene with Ms. Harman were able to push the truck off the sidewalk and into the street. The man, who was Ms. Harman's daughter's

- 4 -

boyfriend,"got into the driver's seat" and drove the truck away. Officer Thomas "didn't know how he started the vehicle."

## A Didactic Interlude

The evidence thus far recounted is essentially that version of the evidence most favorable to the State. It is, therefore, that version of the evidence and only that version of the evidence which we will examine in assessing whether the State met its burden of production.[1] That corpus of evidence, however, was not quite the entire case most favorable to the State. There was also a permitted inference of consciousness of guilt that would not have been available a few years ago but has now been added to the State's arsenal. As an interesting and relatively recent nuance of the law, it behooves us to give it an appreciative nod.

Following his refusal to cooperate with Officer Wesolowski in conducting a field sobriety test, the appellant was arrested and transported to the station house. He was there asked to submit to a breath alcohol test. He expressly refused to do so. The fact of that refusal was introduced into evidence by the State and no limitation was placed on the significance or the weight that the jurors might choose to give it.

The admissibility of such a refusal as evidence of consciousness of guilt, however,

---

[1]Three other witnesses, all called by the defense, were 1) Irvin Fornoff, a resident of the Inverness Avenue neighborhood; 2) Tammy Harman, the appellant's girlfriend and the owner of the pickup truck; and 3) Jamie Harman, Tammy Harman's daughter. Their exculpatory testimony was clearly not a part of that version of the evidence most favorable to the State's case. As important as it may have been on the ultimate burden of persuasion, it does not figure into our assessment of whether the State satisfied its burden of production.

was not always allowed. Prior to 2001, Maryland Code, Courts and Judicial Proceedings Article, §10-309 dealt with chemical testing for alcohol, drugs, or controlled dangerous substance and also with the evidentiary consequences of a suspect's refusal to submit to such a test. In terms of evidentiary consequences, §10-309(a)(2) then provided:

> "<u>No inference or presumption concerning either guilt or innocence arises because of refusal to submit</u>. The fact of refusal to submit is admissible in evidence at the trial."

(Emphasis supplied).

At first glance, the two sentences of the then applicable subsection might seem to have been contradicting each other. Why admit the refusal into evidence if no inference could then be drawn from it? The second sentence seemed to permit precisely what the first sentence forbade. In <u>Krauss v. State</u>, 322 Md. 376, 587 A.2d 1102 (1991), however, a fragmented (4-3) Court of Appeals resolved the ambiguity. The majority opinion held that the refusal to take the test, albeit technically "admissible in evidence," was "admissible only where material and relevant to a matter other than guilt or innocence." 322 Md. at 386. Thus the matter stood for the next ten years. There was no permitted inference of consciousness of guilt.

By Chapter 2 of the Acts of 2001, the General Assembly rewrote §10-309(a)(2) so as to eliminate entirely the language that "[n]o inference or presumption concerning either guilt or innocence arises because of refusal to submit." The removal of that prohibition also removed the shackles from what had been the second sentence, a sentence that after 2001

- 6 -

stood alone without any limitation on the significance a jury might give the evidence of refusal. The preamble to the amending statute provided:

> "For the purpose of repealing a prohibition against an inference or presumption concerning guilt or innocence arising because of a person's refusal to submit to a certain test for alcohol ... and generally relating to evidence of a person's refusal to submit to a certain test for alcohol ... in prosecutions of certain alcohol ... related driving offenses."

(Emphasis supplied). Krauss v. State thereby became a dead letter.

Wyatt v. State, 149 Md. App. 554, 817 A.2d 901 (2003), explicated the new dispensation. The State, in convicting the defendant of driving under the influence, had relied in part on a permitted inference of guilt arising from the defendant's refusal to take a breathalyzer test at the police station following his arrest. The defendant had timely objected to the admissibility of the evidence of his refusal to take the test. He also objected to the failure of the trial judge to give a limiting instruction to the jury.

> "At the close of the case, appellant's counsel requested that the court instruct the jury that no inference or presumption of guilt arises because of appellant's refusal to submit to a breathalyzer test. When the court failed to include such an instruction, counsel took exception."

149 Md. App. at 559. (Emphasis supplied).

A key contention on appeal was that the State's use of the inference of guilt violated the defendant's right against self-incrimination as guaranteed by Article 22 of the Maryland Declaration of Rights. Judge James Eyler's opinion for this Court thoroughly analyzed and

rejected the contention, albeit by way of well-considered dicta.[2] The appellant in Wyatt had obviously turned to the Maryland Declaration of Rights because the Supreme Court's decision in South Dakota v. Neville, 459 U.S. 553, 103 S. Ct. 916, 74 L.Ed.2d 748 (1985), had squarely foreclosed any reliance on the federal Fifth Amendment.

> "Appellant concedes, and we recognize, that the Supreme Court in South Dakota v. Neville ... held that the admission into evidence of a defendant's refusal to submit to a blood-alcohol test does not offend the constitutional right against self incrimination."

149 Md. App. at 570. (Emphasis supplied).

Judge Eyler's opinion rejected Wyatt's invitation to ignore South Dakota v. Neville and to base a reversal on independent state grounds.

> "Maryland's courts have closely followed the reasoning employed by the Supreme Court in Schmerber v. California, 384 U.S. 757, 86 S. Ct. 1826, 16 L.Ed.2d 908 (1966), upon which the Neville case relies. Finally, we find appellant's reasoning to be flawed because other states with constitutional language similar to ours have adopted the Neville holding, finding no conflict with their own state constitutions."

149 Md. App. at 571. (Emphasis supplied). This Court expressly elected to follow the lead of South Dakota v. Neville.

> "Finding the reasoning employed by the Supreme Court in Neville persuasive, we hold that admission of the evidence of a defendant's refusal to submit to a breathalyzer test does not violate the defendant's right against self incrimination as guaranteed by Article 22 of the Maryland Declaration of Rights."

149 Md. App. at 576-77. (Emphasis supplied). Our opinion in Wyatt further pointed out that

---

[2]Although dicta there, Wyatt's conclusion is now a part of our holding here.

no less than sixteen state courts had as of 2003 either followed South Dakota v. Neville or had, indeed, anticipated it. 149 Md. App. at 573-74.

The Wyatt opinion also dealt with the related requirement that an inference based on a refusal to submit to a test must not only be constitutionally permitted but must also be relevant as well. We held in that regard:

> "The amendment to section 10-309 is a legislative declaration of relevance to the question of guilt subject, in a given case, to weighing the evidence's probative value against undue prejudice and subject to other reasons for exclusion. While the amendment makes refusal to take a breathalyzer test admissible, admissibility remains subject to the usual evidentiary limitations on relevant evidence. The amendment permits, but does not require, a factfinder to draw an inference of guilt."

149 Md. App. at 564. (Emphasis supplied).

In McCormick v. State, 211 Md. App. 261, 65 A.3d. 178 (2013), this Court was dealing with the distinct, albeit related, issue of the bearing that an inference based on the refusal to take a field sobriety test (as opposed to a test at the station house following a valid arrest) might have not on the ultimate merits of guilt or innocence but on the antecedent issue of probable cause. In her general background discussion of the larger issue, Judge Irma S. Raker (specially assigned) noted for this Court:

> "In 2001, the General Assembly permitted juries to decide what weight, if any, to give the defendant's refusal to take a chemical test in determining guilt or innocence. ... Today, trial courts instruct jurors in drunk driving cases that they are permitted, if they so choose, to weigh the defendant's refusal to take a chemical test when determining guilt or innocence."

211 Md. App. at 272 n.6. (Emphasis supplied).

Maryland Pattern Jury Instruction – Criminal (2d Ed., 2013 Supp.) 4:10.5 deals with "Driving Under the Influence of Alcohol and Driving While Impaired by Alcohol – Effect of Refusal to Submit to Blood or Breath Test". With respect to what significance a jury might give a refusal by the defendant to submit to the test, MPJI-Cr 4:10.5 provides:

> "<u>You have heard evidence that the defendant refused to submit to a test</u> to determine [his] [her] [alcohol level] [the presence of drugs or a controlled dangerous substance]. You must first decide whether the defendant refused to submit to a test. <u>If you find that the defendant refused to submit to a test, you must then decide whether this refusal is evidence of guilt</u>. Refusal to submit to a test may be based on reasons that are consistent with innocence or other reasons that are consistent with guilt. <u>In order to decide</u> whether the defendant refused to submit to a test and <u>what, if any, weight to give the refusal, you should consider all of the evidence in the case</u>."

(Emphasis supplied).

From the appellant's refusal to submit to a breath alcohol test in this case, the jurors would have been permitted to infer (although they need not have done so) that the appellant thereby evidenced a consciousness of guilt. Guilt, of course, is not being drunk <u>per se</u>. That is not necessarily illegal. Awareness, however, that one was both drunk and driving could well provoke consciousness of guilt. That combination is illegal. The jurors, of course, were not required to draw any such inference – but they were permitted to. That they could have done so contributed to the State's establishing of a <u>prima facie</u> case satisfying, as a matter of law, its threshold burden of production.

## Carrying Coals To Newcastle

In this case, however, the permitted inference of a consciousness of guilt is a classic

instance of carrying coals to Newcastle. The physical evidence permitting a conclusion that the appellant had been driving the disabled pickup truck was so bounteously sufficient that the permitted inference of the appellant's consciousness of guilt was completely redundant.

At this stage of review and on the issue of legal sufficiency, we are not concerned with whether the State proved beyond a reasonable doubt that the appellant had been driving the pickup truck shortly before it bounced up over the sidewalk. That is not our call. Indeed, only the jurors could answer that question (which they did with their verdict of guilty). Our concern is whether the State established a reasonable likelihood that the appellant had been driving, enough to permit the jury to consider that possibility.

In <u>Gore v. State</u>, 74 Md. App. 143, 536 A.2d 735 (1988), the police were called to the parking lot of a 7-11 store "to investigate a report that a man was asleep behind the wheel of an automobile." 74 Md. App. at 144. In that case, as here, the police "found a man ... passed out behind the steering wheel." <u>Id</u>. The man was clearly drunk. The question before this Court was whether it was legally sufficient to permit a finding that the sleeping man had been driving the car. The argument there was based on the inability of the police to testify that they "had seen the car move." Judge Robert M. Bell (later Chief Judge of the Court of Appeals) held for this Court that that failure did not "undermine" the State's case and that the fact that the defendant had been driving can be inferred from circumstantial evidence.

> "It is axiomatic that the necessary rational inferences to support a finding of guilt beyond a reasonable doubt may be drawn by the trier of fact

from circumstantial evidence."

74 Md. App. at 149.

In distinguishing the Gore case from Thomas v. State, 277 Md. 311, 353 A.2d 256 (1976), a key piece of the circumstantial evidence that the defendant had recently been driving the car was that the officer had felt the hood of the car and "the engine was still warm to the touch." 74 Md. App. at 144. In Gore the evidence was held to have been sufficient to establish a prima facie case that the defendant had been driving. The State's case here is significantly stronger than it was in Gore. In that case, "the engine was warm to the touch." In this case, three separate witnesses testified to "white smoke" coming from "the engine compartment" as if it were "overheating." At the same time, there was radiator fluid "coming from under the truck." Officer Thomas, moreover, testified that "it appeared that the truck was still running." In Gore, the car and the sleeping defendant were lawfully parked in the parking lot of the 7-11 and the officer "had no knowledge as to how long the car had been on the 7-11 lot." 74 Md. App. at 145. In this case, the conclusion seemed unavoidable that the pickup truck had just bounced over the curb, crossed the sidewalk, and come to rest in the abutting bushes.

In Owens v. State, 93 Md. App. 162, 611 A.2d 1043 (1992), the conundrum to be solved by circumstantial evidence was a bit different.

"The circumstance is that a suspect was found behind the wheel of an automobile parked on a private driveway at night with the lights on and with the motor running. Although there are many far-fetched and speculative hypotheses that might be conjured up (but which require no affirmative

- 12 -

elimination), <u>there are only two unstrained and likely inferences that could reasonably arise. One is that the vehicle and its driver had arrived at the driveway from somewhere else. The other is that the driver had gotten into and started up the vehicle and was about to depart for somewhere else.</u>"

93 Md. App. at 163. (Emphasis supplied).

The defendant behind the wheel was indisputably drunk. But had he been driving? If the man in the driveway had arrived from somewhere else, he had been driving and was guilty. If, on the other hand, he was about to depart for somewhere else, he had not yet been driving and was not guilty. This Court needed a circumstantial tiebreaker. Several possibilities for tiebreakers floundered because of the failure of the State to have presented readily available evidence.

As we sought "to break the tie between whether the appellant had not yet left home or was already abroad upon the town," 93 Md. App. at 167, the initial complaint that brought the police officer to the scene was found to have had circumstantial significance:

"Without anything further as to its contents being revealed, it was nonetheless in evidence that <u>the thing that had brought Trooper Cottman to the scene was a complaint about a suspicious vehicle. The inference is reasonable that the vehicle had been driving in some sort of erratic fashion.</u> Had the appellant simply been sitting, with his motor idling, on the driveway of his own residence, it is not likely that someone from the immediate vicinity would have found suspicious the presence of a familiar neighbor in a familiar car sitting in his own driveway. <u>The call to the police</u>, even without more being shown, <u>inferentially augurs more than that. It does not prove guilt in and of itself. It simply makes one of two alternative inferences less reasonable and its alternative inference thereby more reasonable</u>."

<u>Id.</u> (Emphasis supplied).

The initial complaint in this case had even more potency. What brought Baltimore

- 13 -

City firefighters to Inverness Avenue at 1:20 a.m., was an emergency call of "a vehicle accident and report of people trapped." That call or a parallel call also brought an ambulance and the police to the scene moments thereafter. That call or calls gave rise to a permitted inference that the "vehicle accident" had just occurred a brief time before the firefighters arrived and belie the alternate possibility that the appellant had been quietly sleeping in the driver's seat for some appreciable length of time. In any event, the circumstantial evidence in this case was stronger than the circumstantial evidence that was held to have been legally sufficient in Owens v. State.

In Atkinson v. State, 331 Md. 199, 627 A.2d 1019 (1993), by contrast, the Court of Appeals held that the evidence was not legally sufficient to support a conviction for driving while intoxicated. The defendant there "was sitting intoxicated and asleep in the driver's seat of his vehicle." 331 Md. at 202. A key factor in that case, however, was that the vehicle was "lawfully parked on the shoulder of the road." Id. The defendant could well have been "sleeping it off" and there was no evidence to support even an inference that he had actually driven the car while intoxicated. In terms of the circumstances that may give rise to an inference that the car has recently been driven, a key factor is that of where the car is resting when it is first observed by the police.

> "The location of the vehicle can be a determinative factor in the inquiry because a person whose vehicle is parked illegally or stopped in the roadway is obligated by law to move the vehicle, and because of this obligation could more readily be deemed in 'actual physical control' than a person lawfully parked on the shoulder or on his or her own property. In sum, the primary focus of the inquiry is whether the person is merely using the  vehicle as a

- 14 -

> stationary shelter or whether it is reasonable to assume that the person will, while under the influence, jeopardize the public by exercising some measure of control over the vehicle."

331 Md. at 217. (Emphasis supplied).

It was that factor – the location of the car in which a defendant was found drunk and asleep – that distinguished Atkinson v. State from Dukes v. State, 178 Md. App. 38, 940 A.2d 211 (2008), a case in which this Court held that the evidence was legally sufficient to support a finding that the defendant had been driving the car. The police found the defendant "asleep in the driver's seat, and the vehicle keys were on the floor mat below the steering wheel." 178 Md. App. at 39.

The vehicle in Dukes, however, in contrast to the vehicle in Atkinson which had been legally parked on the shoulder of the road, was sitting in a travel portion of a road and in a turn lane. Judge Hollander's opinion for this Court pointed out that location was the key factor giving rise to the permitted inference that the defendant had recently driven the car to the location.

> "Here, the fact that the appellant was intoxicated and asleep in the driver's seat of a vehicle that was stopped in the roadway, with its lights on, is powerful circumstantial evidence that appellant drove the vehicle to that location while intoxicated."

178 Md. App. at 52. (Emphasis supplied).

That location of the vehicle, as it was in the Dukes case, is a critical factor working against the appellant in the case at hand. The pickup truck was straddling the sidewalk with its nose in the abutting bushes as its engine was emitting smoke and radiator fluid was

- 15 -

pouring out onto the sidewalk. The pickup truck was not in a place where it had a lawful right to come to rest.

The evidence in this case was legally sufficient to support the convictions.

**JUDGMENTS AFFIRMED; COSTS TO BE PAID BY APPELLANT.**