*Marconi Palmer, Jr. v. State of Maryland*, No. 1728, September Term 2023, filed August 28, 2025.  Opinion by Beachley, J.

**TRAFFIC VIOLATIONS – DRIVING UNDER THE INFLUENCE OF ALCOHOL – EVIDENTIARY SUFFICIENCY – TEMPORAL PROXIMITY OF DRIVING AND DRINKING**

**TRAFFIC VIOLATIONS – NEGLIGENT DRIVING – EVIDENTIARY SUFFICIENCY**

**TRAFFIC VIOLATIONS – FAILURE TO OBEY DESIGNATED LANE DIRECTIONS – EVIDENTIARY SUFFICIENCY – ROAD MARKINGS**

**Facts:**  Police arrived at the scene of a single-vehicle accident at approximately 11:30 p.m.  The vehicle had run off the road into a wet, grassy ditch and hit a speed limit sign.  A second vehicle was parked nearby, and five to six people were present at the scene when officers arrived.  Appellant, Marconi Palmer, Jr., was approached by officers, who noticed that his breath smelled of alcohol, his eyes were bloodshot, and his speech was "slow and lethargic."  The officers also noticed that appellant's shoes were wet and covered in grass.  Appellant told the officers that a tow truck was on the way, and he intended to "pump up my tire and then we can leave."  The hood of the vehicle was warm, a small bottle of whiskey was found on the ground near the vehicle during an inventory search, and a card bearing appellant's name was found inside the vehicle.  Appellant was arrested and charged with driving under the influence of alcohol, driving while impaired by alcohol, negligent driving, failure to obey designated lane directions, and various other traffic offenses.  The key to the vehicle was found in appellant's pocket. At trial, appellant's girlfriend testified that she last saw appellant at 8:00 the evening of the accident, and he had not been drinking at that time.  She additionally testified that she owned the vehicle involved in the accident, and there was only one key to the vehicle.  No police officer could opine when the accident occurred or how long appellant had been at the scene before the police arrived.

Appellant moved for a judgment of acquittal on all counts, based on evidentiary insufficiency.  The trial court granted judgment of acquittal as to some charges, but denied the motion as to the charges relevant to the appeal.

**Held:** Affirmed in part and reversed in part.

The Appellate Court concluded that there was evidence sufficient to support an inference that appellant had been driving the vehicle.  The evidence supporting this inference included: appellant's shoes being wet and covered in grass, indicating he was walking in the area where the vehicle stopped; the card bearing his name inside the vehicle; his statements to police concerning the tow truck and "pump[ing] up my tire"; and his being in possession of the only key to the vehicle, which was owned by his girlfriend.

Additionally, the Court concluded that the nature of the accident supported the convictions for negligent driving and failure to obey designated lane directions.

However, the Court held that the evidence did not support a conviction for driving under the influence of alcohol or while impaired by alcohol due to the lack of evidence indicating when the accident occurred and whether appellant had access to alcohol between that time and when police arrived. In reaching this conclusion, the Court reviewed cases from other states. The Court determined that the line of cases from Missouri which required evidence of a "temporal connection between the defendant's last operation of a motor vehicle and his observed intoxication[,]" *State v. Hatfield*, 351 S.W.3d 774, 780 (Mo. Ct. App. 2011), were more persuasive than those from Texas allowing an inference where the defendant is found intoxicated at the scene of a single-vehicle accident, *e.g. Kuciemba v. State*, 310 S.W.3d 460 (Tex. Crim. App. 2010). The Court noted that the cases requiring evidence of a temporal connection were consistent with the Maryland Supreme Court's decision in *Thomas v. State*, 277 Md. 314 (1976). In *Thomas*, the evidence indicated that the defendant was found intoxicated in the driver's seat of a vehicle parked on the side of a road, but there was no evidence indicating how the long the vehicle had been there, whether the defendant drove the vehicle to that location, whether he had been dropped off there by someone else, or whether the vehicle was operable. *Id.* at 325-26. The *Thomas* Court concluded that the State "utterly failed to prove the corpus delicti of the crime, that Thomas drove the vehicle on a public highway while his driving ability was impaired by alcohol." *Id.* at 326. The *Thomas* Court also cited with approval a Vermont case, *State v. Sanford*, 108 A.2d 516 (Vt. 1954). In *Sanford*, the Supreme Court of Vermont held that evidence indicating that the defendant was asleep and intoxicated in the front seat of a vehicle which had run off the road into a ditch was insufficient to convict the defendant of driving while under the influence of alcohol because there was no indication of when he drove off the road or whether he had been drinking before that time. *Id.* at 516-17. Although *Thomas* did not squarely address the temporal connection between the defendant's operation of the vehicle and his state of inebriation, the Court concluded that the *Thomas* Court's approval of *Sanford* was indicative that our Supreme Court would most likely follow the Missouri line of cases.

Accordingly, the Appellate Court reversed appellant's convictions for driving under the influence of alcohol and driving while impaired by alcohol.

Circuit Court for Somerset County
Case No: C-19-CR-23-000067

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 1728

September Term, 2023

_____
_____

MARCONI PALMER, JR.

v.

STATE OF MARYLAND

_____

Beachley,
Zic,
Woodward, Patrick, L.
    (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Beachley, J.
Concurring and Dissenting Opinion by Zic, J.

_____

Filed: August 28, 2025

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

As a result of a single-vehicle accident, Marconi Palmer, Jr., appellant, was charged in the District Court of Maryland for Somerset County with various traffic offenses as well as obstructing and hindering a police officer in the performance of his lawful duties. Appellant prayed a jury trial and the case was transferred to the Circuit Court for Somerset County.

A jury trial was held on October 3, 2023. After the State *nol prossed* four counts and the trial judge granted judgment of acquittal as to an additional four counts, the jury found appellant guilty of the following offenses:

- Driving or attempting to drive a vehicle while under the influence of alcohol (Count 2).
- Driving or attempting to drive a vehicle while impaired by alcohol (Count 3).
- Driving or attempting to drive a motor vehicle on a highway without the required license or authorization (Count 4).
- Negligent driving (Count 8).
- Failure of an individual driving on a highway to display a license to a uniformed police officer on demand (Count 9).
- Failure to control vehicle speed on a highway to avoid a collision (Count 13).
- Failure to obey designated lane directions (Count 14).

Appellant was sentenced to 5 months and 29 days in the Somerset County Detention Center for Count 2, driving under the influence of alcohol, and a consecutive term of 60 days for Count 4, driving without a required license, for a total aggregate sentence of 7 months and 29 days (less credit for 38 days of time served). All remaining convictions merged for sentencing purposes. This timely appeal followed.

The sole issue presented for our consideration is whether the evidence was sufficient to sustain appellant's convictions. For the reasons set forth below, we shall reverse

appellant's convictions for driving under the influence of alcohol (Count 2) and the merged conviction for driving while impaired by alcohol (Count 3). We agree with the parties that the evidence was legally insufficient to establish a violation of TR § 21-801(b), failure to control speed to avoid a collision (Count 13), but affirm the judgments of the circuit court in all other respects.

## FACTUAL BACKGROUND

On the night of September 17, 2022, at approximately 11:30 p.m.[1] Maryland State Police Trooper Jacob Barfield responded to a single-vehicle accident on Somerset Avenue in the area of Route 822 in Somerset County. Upon arriving at that location, Trooper Barfield observed two vehicles: one of the vehicles was "located in the roadway on Somerset Avenue" and the other, a silver Kia Sorento, was "completely off the roadway in a ditch and grass area about roughly ten feet from the roadway." Trooper Barfield noted that the road was dry. The roadway was marked with a double-yellow center line and "there was a fog line on the right side of the roadway separating the roadway from the grass area," where the Kia was located. The speed limit was 30 miles per hour. A speed limit sign had been struck and was "[c]ompletely down on the ground pulled out of the ground bent." It appeared to have caused a small amount of damage to the Kia.

---

[1] Trooper Barfield testified that he responded at "approximately 9 to 10 p.m.," but that statement appears to be incorrect. Trooper Bynum's body-worn camera is consistent with his testimony that he arrived around 11:40 p.m. It is apparent from the body-worn camera videos that Trooper Barfield arrived at the scene around 11:35 p.m. We appreciate both parties' efforts after oral argument to clarify the officers' time of arrival at the accident scene. We also note that the record is devoid of any indication when the police received the call reporting the accident or when the officers were dispatched to respond.

2

Trooper Barfield observed appellant and four to five other people when he arrived at the scene. The trooper initially saw appellant approximately 15 feet from the Kia. He wore a sleeveless t-shirt, long pants, and slide-on sandals with no socks. Another man at the scene wore shorts. Only one person at the scene, Ginya Hayward, provided any sort of identification to Trooper Barfield. No name or identification was obtained from any other person at the scene, although video recordings admitted at trial showed appellant referring to the man wearing shorts as "Jay."

The police vehicle was equipped with a car-mounted camera and a microphone that Trooper Barfield wore on his belt. Trooper Barfield's camera and microphone recorded the event. Eventually other law enforcement officers arrived at the scene, including State Trooper Logan Bynum and Sergeant Redding and Officer Bower from the Princess Anne Police Department. Trooper Bynum stated that, based on his bodycam video, he arrived at the scene "somewhere around 11:40-ish." Trooper Bynum's body camera also recorded the event, including an inventory search that he conducted on the Kia.[2]

---

[2] The record is somewhat unclear with respect to the video evidence that was admitted at trial. The trial transcript shows that State's Exhibits 2A, 2B, 2C, and 4A were admitted in evidence. State's Exhibit 2A is a video recording from Trooper Barfield's vehicle-mounted camera that was connected to the microphone he wore on his duty belt. At trial, the court reporter attempted to transcribe that video recording as portions of it were played for the jury, but the video was not transcribed completely, and a significant portion of the recording was transcribed as "indiscernible." On appeal, counsel for appellant filed an unopposed motion to correct the record to include a transcription of State's Exhibit 2A, which we granted. State's Exhibit 2B is a video recording of the interior of Trooper Barfield's vehicle as he transported appellant to the State Police Barracks. State's Exhibit 2C shows a vehicle inventory conducted by Trooper Bynum on the Kia Sorento located at the scene. The record on appeal includes a CD containing the video recordings admitted as State's Exhibits 2A, 2B, and 2C. That CD also includes a video that appears to be from

(continued)

3

Upon arriving at the scene, Trooper Barfield asked if appellant was injured and needed medical treatment, but appellant declined. The officer noticed that appellant's feet were wet and covered with grass. He also detected the odor of an alcoholic beverage on appellant's breath, saw that his eyes were "bloodshot and glassy[,]" and noticed that his speech was at times "slow and lethargic[.]"

Trooper Barfield was not able to determine how long before his arrival the Kia entered the ditch or how long appellant had been at the scene. Trooper Bynum similarly could not state when the "accident actually occurred." Appellant refused Trooper Barfield's request for identification. Although he did not ask appellant for the Kia's registration, Trooper Barfield ultimately determined that the vehicle was validly registered to appellant's girlfriend, Jessica Lukasz.[3]

While at the scene, appellant engaged in conversation and "fist bumps" with the troopers and officers who were present. On several occasions, he reminded "Jay" to continue recording the event on his cell phone. Appellant refused to identify himself, refused to answer the officers' questions, and stated that he was asserting his constitutional rights under the First and Fifth Amendments. Trooper Bynum testified that appellant said

---

Trooper Bynum's bodyworn camera. As there is no indication that that video was admitted in evidence at trial, we shall not consider it. A separate CD contains State's Exhibit 4A, which is a video recording from Trooper Bynum's bodyworn camera. That CD also contains two other video recordings. As there is no indication in the record before us that those two video recordings were admitted in evidence at trial, we shall not consider them on appeal.

[3] Ms. Lukasz's name is also spelled Lucates in the record, but we shall use this spelling for consistency herein.

"he was going to pump up his tire and . . . basically be on his way." Video footage from Trooper Bynum's body-worn camera, admitted in evidence as State's Exhibit 4A, recorded appellant saying, "[h]ey look man, I'm gonna pump my tire up and then we can leave." It also recorded appellant saying, "OK so what the sign say that we hit or whatever it hit[,]" "I just told y'all I got a tow truck coming[,]" and "[w]ait till my trucks, my tow truck comes and we're good."

Appellant declined to perform any field sobriety test. In response to Trooper Barfield's request to Trooper Bynum to "touch the hood of the car and make sure it's still warm and everything," Trooper Bynum responded, "[y]ou can still feel heat coming out of it." Appellant was arrested for driving under the influence of alcohol and transported to the State Police barracks. In a search incident to his arrest, a key fob for the Kia was found in appellant's pants pocket. No evidence of alcohol, such as bottle caps or bottles, was found on appellant's person. While transporting appellant in the front passenger seat of his police cruiser, Trooper Barfield continued to notice the odor of alcoholic beverage emanating from appellant. Eventually, Trooper Barfield was able to obtain appellant's identification and run a check of his driver's license. Appellant's driving record from the Motor Vehicle Administration showed that his license had been suspended on October 1, 2020, but Trooper Barfield did not know the reason for the suspension.

Trooper Bynum conducted a search of the Kia that was captured on his body-worn camera and ultimately played for the jury. In the vehicle's console, Trooper Bynum located an Independence card bearing appellant's name. On the ground outside the Kia he found

5

a small bottle of Fireball whiskey. Trooper Bynum did not see the bottle fall or otherwise come out of the Kia.

Jessica Lukasz testified that she started dating appellant about seven months prior to the incident and they began living together a couple of months before the incident. On September 17, 2022, Ms. Lukasz and appellant spent the day together picking apples and then they attended a cookout in Pocomoke City. She was with appellant until about 8:00 p.m. and did not witness him drink any alcoholic beverage. Ms. Lukasz confirmed that she was the owner of the Kia Sorento. She stated that she had only one set of keys for the Kia and acknowledged that it would be "safe to say" that the person who had her car key also had her car.

Appellant called one witness on his behalf. His mother, Antoinette Cosar, testified that on a Sunday, sometime after September 17, 2022, her nephew gave her the key to the Kia Sorento. Ms. Cosar stated "[t]here was only one key." She otherwise had no information about who was driving or how the accident happened.

We shall include additional evidence as necessary in our discussion of the issues presented.

**DISCUSSION**

All of appellant's convictions required the State to prove beyond a reasonable doubt that he had been driving or attempting to drive a vehicle. Appellant contends that the evidence is insufficient to sustain his convictions. He argues that the State failed to prove beyond a reasonable doubt that he had been driving the Kia. Although appellant acknowledges that the evidence might have supported a rational inference that he was in

6

the Kia at some undetermined point, he claims the evidence was insufficient to show that he was driving or attempting to drive the Kia (or any other vehicle). On this point, we conclude that there was sufficient evidence that appellant was driving the Kia.

Appellant further argues that there was insufficient evidence to prove he was under the influence of alcohol at the time of the accident. On this point, we agree that there was insufficient evidence to prove appellant was under the influence of alcohol at the time of the accident and therefore reverse his convictions for driving under the influence and driving while impaired.

Finally, we conclude that there was sufficient evidence to support appellant's convictions for negligent driving and failure to obey designated lane directions.

## A. Motions for Judgment of Acquittal

Maryland Rule 4-324(a) grants a criminal defendant the right to move for judgment of acquittal at the close of all evidence. At the close of the State's case, defense counsel moved for judgment of acquittal on all counts. The primary focus of counsel's argument was Count 1, the charge of obstructing and hindering a police officer. On that count, the court granted judgment of acquittal. The trial judge proceeded to consider the remaining charges. The court made the following statements relevant to the present appeal:

> [A]t this juncture, based upon the evidence I've heard, that the trooper observed the vehicle, there was only one operator of the vehicle, and that the vehicle left the roadway and hit the state highway sign, and that the roadway was dry, it was not wet – it was wet conditions in the grass, but the roadway was dry.
>
> Obviously there are markings, the designated lane direction markings from the video. So with that evidence being considered in the light most favorable to the State at this point, the motion for judgment of acquittal at

7

this juncture is denied as to Count XIV, failure to obey designated lane direction, XV, failure to control vehicle speed to avoid collision and also as to Count VIII negligent driving.  All right.

. . .

At least as to the evidence in a light most favorable to the State for the driving while under the influence count, we've got testimony, video evidence as well, testimony from the officers that the defendant had bloodshot eyes, the speech was slurred, I could observe that from the audio on the video.

Albeit, we don't know who this fire ball little shot plastic container was from, it could have been laying there as trash, so I'm not putting a whole lot of stock into that, . . . but we do have – Ms. [Lukasz] said there's only one fob to the car and whoever had the fob would have been driving the car, so certainly there can be a rational inference drawn from that, that Mr. Palmer when they searched and had the fob for the car and therefore had dominion and control of the car . . . .

. . .

And therefore, based upon that evidence that I've cited as to driving under the influence of alcohol and driving impaired by alcohol, the motion is denied at this juncture.

Thereafter, the court granted judgment of acquittal as to Count 5, driving on a suspended license, Count 6, driving while license or privilege to drive was suspended, and Count 10, failure to display vehicle registration upon demand by a police officer.  At that point, the remaining charges were Count 2, driving or attempting to drive while under the influence of alcohol; Count 3, driving while impaired by alcohol; Count 4, driving on a highway without a required license; Count 8, negligent driving; Count 9, failure to display a license to a uniformed police officer; Count 13, failure to control vehicle speed as necessary to avoid colliding with any person or any vehicle or other conveyance; and, Count 14, failing to obey designated lane directions.

8

After Ms. Cosar testified, defense counsel renewed the motion for judgment of acquittal. The court denied the motion, stating:

In making the decision, the Court considering the evidence at this juncture as I've stated earlier, the evidence upon which the Court considered at the end of the State's case, obviously now without [sic] additional evidence from Cosar that there was only one key for the car, as well corroborating the evidence from the other witnesses as stated, that there is evidence that Mr. Palmer is at the scene, directly beside the car, his identification in the car.

Ms. [Lukasz] the owner of the vehicle was not at the scene. She stated she was not driving the car. She didn't know who was driving the car, but that there was only one key fob.

The bloodshot glassy eyes, the odor of alcohol on Mr. Palmer's breath and person, the officer noted that not only outside the vehicle but when he placed Mr. Palmer in the patrol vehicle that he smelled it as well.

And based upon that, as well as the evidence that I considered earlier that the vehicle had left the roadway which was clearly marked. The roadway with lane designations, the roadway was dry, that there was no unfavorable weather conditions that the vehicle was operating in and therefore, the Court noted also that road – the roadway, the officer noted it comes out of a roundabout so you have to navigate a corner to do so and that the speed limit sign that was hit I believe from looking at the video, that the road sign that was down, I believe it was a 35 mile an hour sign.

So certainly the vehicle did not navigate that corner. I think the inference could be drawn that it was being [operated] above the speed to avoid the collision of the sign.

So based upon all of that evidence, the Court does believe the evidence is such that reasonable minds would – it should be submitted to the jury to decide. The evidence does directly support rational inferences, such facts upon which (indiscernible – 4:49:43) could be convinced beyond a reasonable doubt as to the defendant's guilt as to the remaining charges.

This appeal challenging the sufficiency of the evidence ensued.

## B. Standard of Review

Appellant makes three arguments in support of his contention that the evidence was insufficient to sustain his convictions: (1) the evidence was insufficient to establish that he was the driver of the Kia, (2) the evidence was insufficient to show that he drove the Kia under the influence of alcohol, and (3) the evidence was insufficient to support convictions for negligent driving and failure to obey lane designations.[4]

When reviewing the sufficiency of the evidence to support a criminal conviction, we must determine, after viewing the evidence in the light most favorable to the State, whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Sewell v. State*, 239 Md. App. 571, 607 (2018) (quoting *Donati v. State*, 215 Md. App. 686, 718 (2014)); *Burlas v. State*, 185 Md. App. 559, 568 (2009) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "If the evidence 'either showed directly, or circumstantially, or supported a rational inference of facts which could fairly convince a trier of fact of the defendant's guilt of the offenses charged beyond a reasonable doubt[,]' then we will affirm the conviction." *Bible v. State*, 411 Md. 138, 156 (2009) (alteration in original) (quoting *State v. Stanley*, 351 Md. 733, 750 (1998)). "We

---

[4] In Count 13, the State charged appellant with failing to control a vehicle's speed as necessary to avoid colliding with any person or any vehicle or other conveyance in violation of TR § 21-801(b). The State's theory was that appellant was not able to negotiate the curve because appellant was going too fast. The State concedes on appeal that the evidence was insufficient to sustain appellant's conviction as to Count 13. We additionally note that there was no evidence that appellant's vehicle "collid[ed] with any person or any vehicle or other conveyance." We shall therefore reverse the appellant's conviction for violating TR § 21-801(b).

do not reweigh the evidence but simply ask whether there was sufficient evidence—either direct or circumstantial—that could have possibly persuaded a rational jury to conclude that the defendant was guilty of the crime(s) charged." *Sewell*, 239 Md. App. at 607 (emphasis removed). In doing so, "[w]e defer to the fact finder's opportunity to assess the credibility of witnesses, weigh the evidence, and resolve conflicts in the evidence." *Lindsey v. State*, 235 Md. App. 299, 311 (2018) (alteration in original) (quoting *Neal v. State*, 191 Md. App. 297, 314 (2010)); *see also Moye v. State*, 369 Md. 2, 12 (2002) ("We give 'due regard to the [fact finder's] finding of facts, its resolution of conflicting evidence, and, significantly, its opportunity to observe and assess the credibility of witnesses.'" (alteration in original) (quoting *McDonald v. State*, 347 Md. 452, 474 (1997))).

"Maryland has long held that there is no difference between direct and circumstantial evidence." *Jensen v. State*, 127 Md. App. 103, 117 (1999) (quoting *Hebron v. State*, 331 Md. 219, 226 (1993)). "[C]ircumstantial evidence alone is sufficient to support a conviction, provided the circumstances support rational inferences from which the trier of fact could be convinced beyond a reasonable doubt of the guilt of the accused." *Handy v. State*, 175 Md. App. 538, 562 (2007) (alteration in original) (quoting *Painter v. State*, 157 Md. App. 1, 11 (2004)). Such inferences "must rest upon more than mere speculation or conjecture." *Smith v. State*, 415 Md. 174, 185 (2010) (citing *Bible*, 411 Md. at 157).

### C. Appellant's Sufficiency of Evidence Claims

1. *The Evidence Was Sufficient to Prove Appellant Drove the Kia*

Section 11-114 of the Transportation Article defines the word "drive" to mean "to

drive, operate, move, or be in actual physical control of a vehicle, including the exercise of control over or the steering of a vehicle being towed by a motor vehicle." Md. Code (1977, 2020 Repl. Vol.), § 11-114 of the Transportation Article ("TR"). The law does not require direct evidence of "driving." In *Atkinson v. State*, 331 Md. 199 (1993), the Maryland Supreme Court determined that a person may be convicted of driving under the influence of alcohol "if it can be determined beyond a reasonable doubt that before being apprehended he or she has actually driven, operated, or moved the vehicle while under the influence." *Id.* at 218. The Court recognized that circumstantial evidence could support a rational inference by a factfinder that a defendant had actually driven his or her car while intoxicated, although no such evidence was presented in that case. *Id.* at 218-19.

In *Gore v. State*, 74 Md. App. 143 (1988), a police officer was dispatched to investigate a report of a man asleep in the driver's seat of an automobile in a parking lot. *Gore*, 74 Md. App. at 144. The officer found Gore passed out behind the wheel of his car. *Id.* The engine was off, the key was in the ignition in the "on" position, an alternator/battery light glowed red on the dashboard, the gear selector was in the "drive" position, and the officer found the car's hood was warm to the touch. *Id.* at 144-45. We concluded that circumstantial evidence supported a rational inference by the factfinder that the appellant had actually driven his car while under the influence. *Id.* at 149. We stated that "[i]t is axiomatic that the necessary rational inferences to support a finding of guilt beyond a reasonable doubt may be drawn by the trier of fact from circumstantial evidence." *Id.* (citing *Finke v. State*, 56 Md. App. 450, 468-78 (1983)). Similarly, in *Harding v. State*, 223 Md. App. 289, 292 (2015), we stated that "[p]roof of the crime . . . may arise from a

12

permitted inference that the defendant was guilty of driving under the influence in the past tense."

In the instant case, there was no evidence that anyone witnessed appellant driving the Kia. Nevertheless, the record evidence, viewed in a light most favorable to the State, was sufficient to support a reasonable inference that appellant was the driver of the vehicle at time of the accident. When Trooper Barfield arrived at the single-vehicle accident, he observed the Kia Sorento in a wet, grassy ditch about ten feet from the dry roadway. Appellant's open sandals were wet and covered with grass, suggesting that he had walked in the wet, grassy area where the Kia was located. An Independence card bearing appellant's name was found in the front console area of the Kia. The Kia belonged to appellant's girlfriend with whom he lived. In addition, Trooper Bynum confirmed that the hood of the vehicle was still warm.

Ms. Lukasz testified that she had only "one set of keys" for the Kia. That testimony was confirmed by appellant's mother who testified that "[t]here was only one key." A key fob for the Kia was found in appellant's pants pocket. From the evidence presented, a jury could reasonably infer that appellant's possession of the key indicated that he was driving the vehicle.[5]

In addition to this circumstantial evidence, statements made by appellant support a reasonable inference that he was the driver of the vehicle. Trooper Bynum testified that

---

[5] Appellant argues that "key fobs are distinguishable from regular keys" and that unlike manual keys, the vehicle could be started if the fob was merely inside the vehicle. We reject appellant's argument because there was absolutely no evidence presented with regard to the type of key fob that was recovered from appellant's pocket or how it operated.

13

appellant said "he was going to pump up his tire and . . . basically be on his way." In the video recording from Trooper Bynum's body-worn camera, appellant is heard using possessive language when referring to the vehicle. He stated, "[h]ey look man. I'm gonna pump my tire up and then we can leave." Appellant also said, "OK so what the sign say that we hit or whatever it hit[,]" "I just told y'all I got a tow truck coming[,]" and "[w]ait till my trucks, my tow truck comes and we're good." Similarly, the transcript of Trooper Barfield's body-worn camera video confirms appellant saying, "[w]ait till my truck – my tow truck comes[.]" Appellant also stated, "[i]t was an accident and everything is good. That's how it happens on the road." Appellant further said, "I'm not driving, I'm traveling." He explained that "[t]rafficking is goods transported to another area into another[,] . . . [b]ut that's not what we're doing. We're traveling. We're traveling people[.]" Finally, during the encounter with the officers at the scene, appellant repeatedly told Jay to continue videotaping the interaction between appellant and the police, but never suggested that Jay (or anyone else) was the driver.

We are satisfied that the totality of the evidence, viewed in the light most favorable to the State, was sufficient to support a reasonable inference that appellant had driven the vehicle to the place it came to rest off the roadway. Accordingly, we reject appellant's argument that the evidence was legally insufficient to establish the "driving or attempting to drive" element of his convicted offenses.[6]

---

[6] In his brief, appellant does not make any specific arguments related to his convictions for "driving on a highway without a required license" (Count 4) or "failure of individual driving on a highway to display a license to a uniformed officer" (Count 9).

14

2. *The Evidence Was Insufficient to Prove that Appellant Drove While Under the Influence of Alcohol*

Appellant contends that even if the evidence was sufficient to establish that he had driven the Kia, the evidence was insufficient to prove that he was under the influence of alcohol when he drove it. For that reason, he maintains that his convictions for driving or attempting to drive a vehicle while under the influence of alcohol and driving or attempting to drive a vehicle while impaired by alcohol must be reversed.

Writing for this Court in *Bryant v. State*, Judge Thieme expressly recognized the issues presented by cases such as the case at bar:

> Not infrequently an automobile accident involves an individual intoxicated or under the influence. Often, the officers arriving at the scene sometime after the actual collision place that person under arrest without even seeing the individual inside an automobile. Such arrests are often based on information provided by witnesses, coupled with subsequent information the officers gather as part of their investigation. That is no different than what occurred here. The instant case was further complicated, however, because of an arguably significant passage of time between the time of the violation and the time the officers arrived at the scene. This issue was dealt with at length at trial, however, and the trial judge assessed the credibility of the various accounts as to what occurred during that time, ultimately determining that the violation of the statute took place.

142 Md. App. 604, 625-26 (2002). No Maryland case has directly explored how such a "significant passage of time between the time of the violation and the time the officers arrived on the scene" could affect the State's burden to prove that the driver was under the influence of alcohol at the time he was driving the vehicle.

The issue was tangentially addressed in *Thomas v. State*, 277 Md. 314 (1976). A police officer found Thomas at 2:25 a.m. "asleep or passed out" in the driver's seat of a vehicle. *Id.* at 315. The vehicle was parked on the shoulder of a highway ramp with its

15

lights on and the engine off. *Id.* The officer knocked on the window to awaken Thomas, who had difficulty rolling the window down and difficulty locating the door handle. *Id.* After Thomas exited the vehicle, the officer smelled alcohol on his breath. *Id.* at 315-16. Thomas "was staggering. His speech was slurred. He was disoriented." *Id.* at 316. The circuit court convicted Thomas of driving while impaired by alcohol. *Id.* On appeal, the Maryland Supreme Court focused principally on the "driving" element of the offense, discussing several out-of-state cases on the sufficiency of evidence to prove that an individual was "driving" the vehicle. *Id.* at 320-25. The Court held that the evidence was insufficient to support the conviction:

> All the evidence in this case proves is that Thomas was in a vehicle by the side of a road, possibly intoxicated, at an early hour in the morning. Left to conjecture is whether he drove the vehicle to that location after imbibing alcohol or whether he had parked it there, been picked up by some other individual, and then dropped off at the same spot as was done in *Poling*[ *v. State*, 295 N.E.2d 635 (Ind. Ct. App. 1973)]. We do not know how long Thomas had been at this location. Also left to conjecture is whether the vehicle was operable. *We may suspect that Thomas did not drop down from outer space into the vehicle in question, that he drove the vehicle to that location, and that when he drove it he was under the influence of alcohol. When the day arrives, however, when a person may be convicted upon the basis of suspicion only, liberty will have vanished from the land.* Under our system of justice it was incumbent upon the State to prove the elements of the crime. *In this instance it has utterly failed to prove the corpus delicti of the crime, that Thomas drove the vehicle on a public highway while his driving ability was impaired by alcohol. In fact, it has yet to prove that he drove the vehicle.* Thus, the conviction must be reversed.

*Id.* at 325-26 (emphasis added). Read narrowly, the Court's holding is limited to its conclusion that the State failed "to prove that [Thomas] drove the vehicle." *Id.* Nevertheless, *Thomas* recognized that "the corpus delicti of the crime" requires the

16

temporal congruence of "dr[iving] the vehicle on a public highway while [the individual's] driving ability was impaired by alcohol."[7]  *Id.*

In his opening brief, appellant discussed *State v. Sanford*, 108 A.2d 516 (Vt. 1954), a case that *Thomas* cited with approval.  In *Sanford*, the defendant was convicted of operating an automobile on a public highway while under the influence of intoxicating liquor.  *Id.* at 516.  On appeal, Sanford challenged the denial of his motion for directed verdict.  *Id.*  Facts adduced at trial showed that law enforcement officers

> found a car with its front wheels driven off the left side of the road opposite a farm house and with its left rear wheel in the left hand ditch, and observed that the tire on the right rear wheel had gouged out the surface of the [gravel] road to a depth of two or three inches, and that the left rear wheel was practically buried in the mud.  The motor was not running, but [the police] did not remember whether the ignition switch was on or off.  They found the respondent lying asleep on the front seat with his buttocks under the steering wheel and his head on the seat near the right hand door, and they found some full and some empty beer bottles on the floor of the car, but did not count them.  When they straightened the respondent up and removed him to the trooper's car they smelled the odor of alcohol, observed that his clothing was mussed up and that his eyes were bloodshot, and found him so intoxicated that his knees would buckle and he couldn't stand up.  Later, when examined by a doctor, the respondent said that he had had two small bottles of beer, that he had been driving the car and had started from White River Junction.

*Id.* at 516-17.

The Supreme Court of Vermont reversed the trial court's denial of Sanford's motion for directed verdict.  In doing so, the court recognized that, under Vermont law, where the evidence relied upon to show that Sanford was under the influence of intoxicating liquor

---

[7] A definition of "drive" was added to the Transportation Article in 1977.  It provides that "'Drive' means to drive, operate, move, or be in actual physical control of a vehicle, including the exercise of control over or the steering of a vehicle being towed by a motor vehicle."  TR § 11-114; *see also Gore*, 74 Md. App. at 149-50.

17

when he operated his automobile was entirely circumstantial, "the circumstances proved must exclude every reasonable hypothesis except that the respondent is guilty."[8]  *Id.* at 517.  The court determined that because there was no direct evidence that Sanford drank any intoxicating liquor before he drove off the road and no evidence as to the length of time he had been there after the motor stopped running, the "evidence leaves it a matter of conjecture as to whether he was under the influence of intoxicating liquor when he operated his car, and is not so cogent as to exclude every reasonable theory consistent with his innocence." *Id.*

Prior to oral argument, we requested that the parties provide the Court with additional caselaw relevant to "whether the evidence sufficiently established that Appellant was under the influence of alcohol *at the time he was driving the vehicle*."  We commend counsel for their thorough research on this issue, uncovering numerous cases from other jurisdictions.

The parties agree that there are two lines of cases—one that supports appellant's argument (primarily cases from Missouri) and one that supports the State (primarily cases from Texas).  We shall discuss two representative cases from each jurisdiction.

---

[8] We note that Maryland law does not require circumstantial evidence to refute every reasonable hypothesis of innocence.  *See Hebron*, 331 Md. at 227 (circumstantial evidence need not "exclude every possibility of the defendant's innocence, or produce an absolute certainty in the minds of the jurors." (quoting *Gilmore v. State*, 263 Md. 268, 293 (1971), *vacated in part*, 408 U.S. 940 (1972))).  Nevertheless, the fact remains that the *Thomas* Court cited *Sanford* with approval without regard to the different evidentiary standard.  277 Md. at 321-22.

i.      The Missouri cases

In *State v. Hatfield*, 351 S.W.3d 774 (Mo. Ct. App. 2011), the Missouri Court of

Appeals considered whether a defendant involved in a single-vehicle accident could be

convicted of driving while intoxicated where there was no evidence indicating when the

accident occurred.  The court summarized the evidence presented at trial:

> Deputy Jacob Shanks of the Cass County Sheriff's Department was
> dispatched to an accident at 814 Ward Road in Raymore at approximately
> 11:00 a.m. on September 10, 2008.  When he arrived at the scene, Deputy
> Shanks observed a Chevrolet Camaro parked in the driveway of a home with
> a damaged front end, rut marks in a ditch next to the vehicle, a damaged fence
> near the car, and Hatfield standing outside the vehicle.  No one else was
> present at the scene.  Deputy Shanks asked Hatfield what happened, and he
> responded that "I lost it making the turn."  Deputy Shanks observed multiple
> indicators that Hatfield was intoxicated, including a strong odor of alcohol
> on his breath, slurred speech, and balance problems.  When Deputy Shanks
> asked Hatfield for his driver's license, Hatfield responded that it was
> revoked.  Deputy Shanks confirmed the revocation and arrested Hatfield for
> driving while revoked and suspicion of driving while intoxicated.
>
> Deputy Shanks transported Hatfield to the Cass County Sheriff's
> Office and had the vehicle towed and impounded.  After arriving at the
> station, Hatfield refused to perform the standard field sobriety tests [or a
> breath test].

*Id.* at 775-76.

Hatfield was convicted of driving while intoxicated.  *Id.* at 776.  "As the name of

the offense indicates, to support a conviction under [the Missouri DWI statute] the State

must prove beyond a reasonable doubt that the defendant was (1) driving (2) while (3)

intoxicated.  Each of these words has significance, and imposes a separate evidentiary

burden on the State."  *Id.* at 776-77.  Hatfield did not dispute that there was sufficient

evidence to prove that he drove the vehicle and that he was intoxicated when the officer

arrived at the scene. *Id.* at 777. Concerning the "while" element of the offense, the Court noted that it created a temporal connection between the elements of "driving" and "intoxicated":

> However, Hatfield's mere intoxication near his vehicle, without evidence establishing when he last operated it, is insufficient to support his conviction for driving while intoxicated. Missouri courts have made clear that the State must present evidence *linking in time* the defendant's intoxication to the operation of a motor vehicle. "'[T]ime is an element of importance' that the state must prove to sustain its burden to show that a driver drove while intoxicated." Where intoxication is observed at a time separate from the operation of a motor vehicle, a "factfinder cannot determine that one who is under the influence of an alcoholic beverage at an established time was necessarily in that condition at some earlier unspecified moment without any evidence concerning the length of the interval involved."

*Id.* at 778 (alteration in original) (citations omitted). After reviewing cases with analogous fact patterns, the court concluded:

> Thus, to sustain a DWI conviction the State must establish, through direct or circumstantial evidence, the temporal connection between the defendant's last operation of a motor vehicle and his observed intoxication. Such evidence is lacking here. The State's evidence in this case established only that Hatfield drove the vehicle in question at the time of the accident and that he was intoxicated when Deputy Shanks arrived. Here, there is no evidence as to "the approximate time" that Hatfield was "operating the vehicle or the time [the] accident occurred," or "how much time elapsed between the accident and the arrest."

*Id.* at 780 (alteration in original) (quoting *State v. Davis*, 217 S.W.3d 358, 361 (Mo. Ct. App. 2007)). The court especially noted "the minimal investigation" conducted by Deputy Shanks, concluding that "it is impossible to determine from the record the approximate time Hatfield last operated the vehicle, and therefore the State failed to temporally connect Hatfield's intoxication" to his operation of the vehicle. *Id.* Additionally, the court noted

20

the prosecution's failure to produce any evidence concerning Hatfield's access to alcohol after the accident. *Id.* at 780-81. Specifically, the State did not introduce any evidence of an inventory of the vehicle, or a description of the area where the accident occurred that might indicate whether alcohol could be available in the vicinity. *Id.* at 781.

The court disagreed with the State's arguments that Hatfield's refusal to perform field sobriety tests or submit to a breath test could support the verdict, or that the circumstances of the accident itself established DWI. *Id.* at 781-82. In the absence of evidence that the accident had occurred shortly before the officer arrived or that Hatfield had access to alcohol in the interim, refusal of field sobriety tests and a breath test was not sufficiently probative evidence of consciousness of guilt to support a DWI conviction beyond a reasonable doubt. *Id.* at 781. As to the circumstances of the accident, the court stated that "'the manner of a crash does not, on its own, provide sufficient evidence to support a conviction' of DWI." *Id.* (quoting *State v. Varnell*, 316 S.W.3d 510, 516 (Mo. Ct. App. 2010)). Additionally, there was little evidence concerning the nature of the accident. Although the weather was clear and road conditions were normal when the officer arrived, "the lighting, weather, and road conditions at the time of the accident are unknowable, given the lack of evidence as to when the accident occurred." *Id.* at 782. Nor was there evidence "as to the nature of the turn where the accident occurred, the speed limit, signage, presence or absence of skid marks," extent of the damage to the vehicle and fence, or the length or depth of the ruts in the ditch. *Id.* The court concluded that there was insufficient evidence "regarding an essential element of the State's case: whether Hatfield was intoxicated *while* driving." *Id.*

21

In *State v. Byron*, 222 S.W.3d 338 (Mo. Ct. App. 2007), also issued by the Missouri Court of Appeals, a motorist and his fiancé encountered a single-vehicle accident at approximately 1:45 a.m. "[A] car had gone through several tall traffic cones marking off a construction area and had stopped in the construction area. Part of the passenger-side front wheel was hanging over the edge of the road" where there was a two-foot drop. *Id.* at 339. While his fiancé called 911, the motorist approached the vehicle and found it was unoccupied. *Id.* Officer McClintick, who responded to the scene, had driven through the area an hour earlier and did not see the car at that time. *Id.* The officer found the vehicle's registration information in the glove box indicating that the vehicle was owned by Byron. *Id.* Officer McClintick requested that another officer contact Byron at his home. *Id.* Officer Beene arrived at Byron's home around 2:00 a.m. and noticed that Byron was intoxicated. *Id.* at 339-40. Officer McClintick joined Officer Beene at Byron's home and confirmed that Byron was intoxicated. *Id.* Byron denied driving the car and stated that his father had borrowed the car that night. *Id.* at 340. The officers contacted Byron's father, who denied borrowing the car. *Id.* The father testified at trial that Byron called him from a grocery store approximately one-quarter of a mile from the accident site, asking to be picked up because he had been in an accident. *Id.* The father stated that, in the 20 minutes he was with Byron to take him home, Byron did not appear to be intoxicated. *Id.* The officers arrested Byron and seized a set of keys that were in his pocket and a set of muddy shoes placed near the front door of his home. *Id.* They returned to the accident scene and determined that the keys started the vehicle and the tread of the shoes matched a muddy footprint found near the vehicle. *Id.* Byron performed poorly on several field sobriety tests

22

and refused a breath test. *Id.* After a jury trial, Byron was found guilty of driving while intoxicated. *Id.*

Under Missouri law, "when there is a significant interval of time between the time of an accident and the time that the defendant is observed to be intoxicated, the prosecution must offer specific evidence that the defendant was intoxicated at the time the defendant was driving." *Id.* at 341. The court noted that the accident may have occurred up to one hour and twenty minutes before the officers encountered Byron, that he had access to alcohol after the accident, and that the only evidence of his condition immediately after the accident was his father's testimony that Byron was not intoxicated at that time. *Id.* at 342-43. Byron's denial of having driven the car and refusal to submit to a breath test, while "consistent with a fear that he would be accused of driving while intoxicated, . . . do not demonstrate that Byron *actually was* intoxicated when he drove the car into the construction area." *Id.* at 343. The court stated that the "case is close because of the time parameters[,]" but that "[t]he forty-minute-or-more interval between the accident and the contact with the officers, together with the fact that Byron had access to alcohol, is difficult for the State to overcome[.]" *Id.* "The problem is that there is no particular inference one way or another about whether Byron acquired additional alcohol at the [grocery store] or anywhere else." *Id.* The court posited that "[h]ad Byron been found at the scene of the accident relatively soon after the accident occurred, and had there been all the same evidence of intoxication, this would be a different case." *Id.* However, "because of the evidentiary gap," a jury could not find beyond a reasonable doubt that Byron had been intoxicated at the time of the accident. *Id.* at 343-44.

23

ii.     The Texas cases

*Kuciemba v. State*, 310 S.W.3d 460 (Tex. Crim. App. 2010), is a seminal case in Texas on this issue. A police officer was dispatched to a one-vehicle rollover accident. *Id.* at 461. The officer found a pickup truck in a ditch on its wheels, but with a partially crushed roof, indicating it had rolled over. *Id.* Kuciemba was seated behind the steering wheel when the officer arrived, and the officer saw that Kuciemba "had small cuts on his forehead, and blood was running down his face." *Id.* Kuciemba was unsteady on his feet and had "a strong odor of alcohol" on his breath, glassy, bloodshot eyes, and slurred speech. *Id.* "No alcoholic beverages or containers were found in the pickup truck or at the scene. No skid marks were found on the roadway—indicating that [Kuciemba] did not brake before the rollover occurred." *Id.* His blood test at the hospital revealed a blood alcohol level of .214. *Id.* Kuciemba was convicted of driving while intoxicated. *Id.* at 462.

On appeal, the Texas Court of Criminal Appeals reasoned that "[b]eing intoxicated at the scene of a traffic accident in which the actor was a driver is some circumstantial evidence that the actor's intoxication caused the accident, and the inference of causation is even stronger when the accident is a one-car collision with an inanimate object." *Id.* Additionally, the court stated that "a driver's failure to brake also provides some evidence that the accident was caused by intoxication"; a person's "presence behind the steering wheel," still bleeding, "support[s] an inference that the accident had occurred a short time previously"; and a high blood alcohol level "supports an inference either that [Kuciemba] was recently involved in the accident or that he had been intoxicated for quite a while." *Id.*

24

at 463. The court held that "[t]he combination of these facts is sufficient to support [the] conviction for driving while intoxicated." *Id.* at 463.

In *Scillitani v. State*, 343 S.W.3d 914 (Tex. Ct. App. 2011), the Texas Court of Appeals applied *Kuciemba*'s reasoning. There, a police officer was dispatched to the scene of a single-vehicle accident at 1:58 a.m. *Id.* at 915. Scillitani's vehicle "went off the road, into a ditch, and hit a fence pole." *Id.* at 916. There were no skid marks on the road. *Id.* When the officer arrived, Scillitani, his mother, and two tow truck drivers were already at the scene. *Id.* at 915. Scillitani's mother had not been in the vehicle with Scillitani when the accident occurred, but arrived separately after Scillitani notified her of the accident. *Id.* The officer smelled alcohol on Scillitani's breath. *Id.* at 916. He performed poorly on field sobriety tests, and a breath test performed at 3:32 a.m. indicated a blood alcohol content of 0.135. *Id.* There was no evidence indicating whether alcoholic beverage containers were found at the scene or whether the engine was still warm. *Id.* at 920. A jury found Scillitani guilty of driving while intoxicated. *Id.* at 916. On appeal, the Texas Court of Appeals considered the sufficiency of the evidence of "a temporal link between appellant's intoxication and appellant's driving." *Id.* at 917. The court cited *Kuciemba*'s holding "that a person's intoxication at the scene of an accident in which the person was driving a vehicle is some circumstantial evidence that the person was driving while intoxicated." *Id.* at 920 (citing *Kuciemba*, 310 S.W.3d at 462). The court noted that Scillitani was found intoxicated at the scene of the accident, that the accident was a single-vehicle collision with an inanimate object, and there were no skid marks that would indicate Scillitani attempted to brake. *Id.* at 920. The court held that, regardless of the lack of evidence indicating when

25

the accident occurred or whether Scillitani had access to alcohol, "a rational trier of fact could have found beyond a reasonable doubt that [Scillitani] was intoxicated while operating a motor vehicle[.]" *Id.*

Although we allow for the possibility that the Missouri and Texas caselaw on the subject could conceivably be reconciled, it appears that the Missouri courts have focused on the "temporal connection between the defendant's last operation of a motor vehicle and his observed intoxication." *Hatfield*, 351 S.W.3d at 780. Texas courts, on the other hand, permit a circumstantial inference from evidence of a driver's intoxication at the scene of an accident—that the driver's "intoxication caused the accident, and the inference of causation is even stronger when the accident is a one-car collision with an inanimate object." *Kuciemba*, 310 S.W.3d at 462.

We conclude that the Missouri cases are analytically more persuasive. Not only are these cases persuasive in their substantive analysis of the issue, they are more consistent with the underpinnings of our Supreme Court's decision in *Thomas*, particularly in light of the *Thomas* Court's citation of *Sanford* with approval. The mere fact that appellant was found under the influence of alcohol at the scene of a single-vehicle accident does not support a finding that he was under the influence of alcohol at the time he drove the vehicle. To prove a critical element of the crime, the State needed to "offer specific evidence that the defendant was [under the influence or impaired] at the time the defendant was driving." *Byron*, 222 S.W.3d at 341.

Here, the State's evidence established only that appellant drove the Kia and that he was under the influence of alcohol when the police arrived at the scene. The State failed

26

to present any evidence as to when appellant began drinking or how much alcohol he consumed. Ms. Lukasz's testimony that she was with appellant until 8:00 p.m. and did not see him consume alcohol in her presence is uncontradicted. There is nothing in the record to establish the approximate time appellant was operating the vehicle or the time the accident occurred. Although evidence of the time the police were dispatched to respond may have provided some insight into the time of the accident, no such record evidence exists. Consequently, the evidence failed to show how much time elapsed between the accident and the officers' arrival on the scene.

To be sure, there is evidence that the hood of the car was still warm, indicating that the engine had recently been running. In *Gore*, this Court stated that a car's hood being warm is an indication that it was driven recently enough to support a finding that a defendant was "driving." *Gore*, 74 Md. App. at 149. However, that case also included other circumstantial evidence to support that inference, including that the key was in the ignition in the "on" position, the battery light was on, the transmission was in drive, and the defendant was found seated behind the steering wheel. *Gore*, 74 Md. App. at 149. [9] Here, in contrast, the warmth of the hood is the only evidence indicating how recently the car might have been driven. Additionally, there is a significant interval of time during

---

[9] The dissent cites *Gore*, *Dukes*, and *Harding* in support of its view that the evidence was sufficient. *Gore*, 74 Md. App. 143; *Dukes v. State*, 178 Md. App. 38 (2008); *Harding*, 223 Md. App. 289. However, the issue in all three of those cases was whether the defendant was "driving" the vehicle as contemplated by the statutory definition. As stated in Section C.1. above, we conclude that there was sufficient evidence that appellant drove the Kia. To our knowledge, no Maryland case has directly addressed the temporal connection between the defendant's driving or operation of the vehicle and his or her state of sobriety.

which the accident could have happened—as early as approximately 8:00 p.m. when Ms. Lukasz last saw appellant, and as late as 11:00 p.m. or so based on the officers' arrival at the scene around 11:30 p.m. Depending on the weather and other potential conditions, it is possible the hood might remain warm for an hour or more. *See, e.g., Edwards v. State*, 198 Md. 132, 150 (1951) (recognizing that the hood of a car might still be warm more than three hours after the engine is turned off); *U.S. v. Harris*, 435 F.2d 74, 78 (D.C. Cir. 1970) (hood of getaway car still warm one hour after robbery). That length of time would be sufficient to allow appellant to access alcohol and become intoxicated. *See, e.g., Byron*, 222 S.W.3d at 343 (forty minute interval between accident and encounter with police was sufficient for defendant to get a ride home and become intoxicated); *State v. Dodson*, 496 S.W.2d 272 (Mo. App. 1973) (forty minutes to one hour was sufficient time to get a ride home and become intoxicated); *People v. Wells*, 243 N.E.2d 427 (Ill. App. Ct. 1968) (1 hour and 25 minutes was "ample time" to walk home and drink enough whiskey to register 0.20 on breath test); *Coffey v. Commonwealth*, 116 S.E.2d 257 (Va. 1960) (one hour after accident was sufficient time to become intoxicated).

Although the evidence concerning appellant's access to alcohol after the accident is sparse, we note that a small bottle of Fireball whiskey was found near the vehicle. Moreover, appellant appeared to know the occupants in the second car stopped on the roadway, but there is no evidence whether appellant could have obtained alcohol from them before the police arrived (or asked them to conceal alcohol that may have been in his possession). Irrespective of any evidence related to appellant's use of or access to alcohol after the accident, we reiterate that the record is devoid of any evidence of appellant's state

28

of inebriation during the entire time he was driving the vehicle up to going off the roadway and striking the road sign.

The State briefly mentions that the jury could infer a consciousness of guilt from appellant's refusal to submit to a field sobriety test.[10] In *McCormick v. State*, 211 Md. App. 261, 272 n.6 (2013), we noted that, while refusal to submit to a blood or breath test may be considered by a jury as evidence of guilt, "it remains an open question in Maryland whether refusal to submit to a field sobriety test is admissible as evidence of guilt." We need not resolve that issue here, however, because as in *Hatfield*, appellant's refusal to submit to field sobriety tests would not be highly probative of his guilt where the time which elapsed between appellant's operation of the vehicle and his refusal to submit to field sobriety tests is unknown and the State failed to negate the possibility that appellant had access to alcohol after the accident. 351 S.W.3d at 781.

As in *Thomas*, 277 Md. at 325-26, we may suspect that appellant was under the influence of alcohol when he drove the Kia off the roadway and struck a sign, but suspicion alone is not sufficient for a conviction. In a case such as this, the State must provide evidence establishing "the temporal connection between the defendant's last operation of a motor vehicle and his observed intoxication." *Hatfield*, 351 S.W.3d at 780. No such evidence was presented here. We hold that the evidence admitted at trial was legally

---

[10] We note that the State did not request a jury instruction on consciousness of guilt and did not suggest in its closing argument that the jury should infer guilt from appellant's refusal to submit to field sobriety tests. We also note that there is no evidence that appellant was advised of the potential consequences of refusing the officer's request to perform field sobriety tests.

insufficient to prove beyond a reasonable doubt that appellant was guilty of driving under the influence of alcohol or while impaired by alcohol.

3. *The Evidence Was Sufficient to Sustain Appellant's Negligent Driving Offense*

Appellant contends that there was "[n]o evidence whatsoever about how the Kia Sorento ended up on the side of the road or whether the Kia had been speeding." Appellant was charged with negligent driving in violation of TR § 21-901.1(b), which provides that "[a] person is guilty of negligent driving if he drives a motor vehicle in a careless or imprudent manner that endangers any property or the life or person of any individual." *See also Jones v. State*, 175 Md. App. 58, 89 (2007).

The evidence showed that the Kia was driven off the roadway into a grassy area where it struck and knocked down a speed limit sign causing minor damage to the vehicle. As we have already noted, while at the scene of the accident, appellant said, "OK so what the sign say that we hit or whatever it hit" and "[i]t was an accident and everything is good. That's how it happens on the road." Appellant's inquiry into what sign was hit indicated he lacked awareness of the sign. Clearly, he failed to avoid hitting it. Considering all the evidence presented at trial, we conclude that the evidence was sufficient to sustain appellant's conviction for negligent driving.

4. *The Evidence Was Sufficient to Sustain Appellant's Failure to Obey Designated Lane Directions Offense*

Appellant was charged with violating TR § 21-309(d), which provides that "[t]he driver of a vehicle shall obey the directions of each traffic control device that directs specified traffic to use a designated lane or that designates those lanes to be used by traffic

moving in a particular direction, regardless of the center of the roadway."[11]  A traffic control device is defined as "any sign, signal, marking, or device that:  (1) [i]s not inconsistent with the Maryland Vehicle Law; and (2) [i]s placed by authority of an authorized public body or official to regulate, warn, or guide traffic."  *See* TR §§ 11-101, 11-167.  Lane-designation marks on a roadway are "markings" and therefore "traffic control devices" as defined by TR § 11-167.  *Stephens v. State*, 198 Md. App. 551, 561 (2011).

The evidence presented at trial showed that there was a solid white line on the right side of the roadway, described by Trooper Barfield as a "fog line."  That line separated the roadway from the shoulder and adjacent grassy area and ditch where the Kia was located when the police arrived.  Appellant argues that the statute allows for a driver to pull onto a shoulder once "the driver has determined that it is safe to do."  TR § 21-309(b).  However, the Kia was not on the shoulder of the roadway.  From the record evidence, the jury could reasonably infer that the Kia could not have crashed into the speed limit sign and come to rest in the grassy area unless the driver failed to obey the pavement marking, that is, the solid white line or fog line.  Thus, the evidence was sufficient to sustain appellant's conviction for violating TR § 21-309(d).

> **JUDGMENT OF THE CIRCUIT COURT FOR SOMERSET COUNTY AFFIRMED IN PART AND REVERSED IN PART. CONVICTIONS FOR DRIVING OR ATTEMPTING TO DRIVE A VEHICLE**

---

[11] In its brief, the State references TR § 21-309(b) and case law interpreting that statute.  Appellant was not charged with violating subsection (b), but only with violating subsection (d).

31

**WHILE UNDER THE INFLUENCE OF ALCOHOL (COUNT 2), DRIVING OR ATTEMPTING TO DRIVE A VEHICLE WHILE IMPAIRED BY ALCOHOL (COUNT 3), AND FAILURE TO CONTROL SPEED TO AVOID A COLLISION ARE REVERSED. JUDGMENTS OF CONVICTION ON ALL OTHER COUNTS ARE AFFIRMED. COSTS TO BE EQUALLY DIVIDED BY APPELLANT AND SOMERSET COUNTY.**

Circuit Court for Somerset County
Case No. C-19-CR-23-000067

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 1728

September Term, 2023

_____

MARCONI PALMER, JR.

v.

STATE OF MARYLAND

_____

Beachley,
Zic,
Woodward, Patrick, L.
    (Senior Judge, Specially Assigned),

JJ.

_____

Concurring and Dissenting Opinion by Zic, J.

_____

Filed: August 28, 2025

I agree with that Majority that "[n]o Maryland case has *directly* explored how such a 'significant passage of time between the time of the violation and the time the officers arrived on the scene' could affect the State's burden to prove that the driver was under the influence of alcohol at the time he was driving the vehicle." *Palmer v. State*, No. 1728, slip op. at 16 (Md. App. Aug. __, 2025) (emphasis added). Maryland cases have, however, repeatedly addressed the broader question of whether there is sufficient evidence to conclude that a defendant was driving under the influence of alcohol, which is the overarching question presented to us on appeal here.

Mr. Palmer argues that there is insufficient evidence to prove that he drove the vehicle *while* under the influence of alcohol and relies on the Vermont case, *State v. Sanford*, 108 A.2d 516 (Vt. 1954), to support his contention. Under Vermont law, when "the evidence relied upon to show this fact is entirely circumstantial, the circumstances proved must exclude every reasonable hypothesis except that the respondent is guilty." *Id.* at 517. I would decline to apply any holding from *Sanford* to the present matter due to the significant difference in evidentiary standards under Vermont and Maryland law.

"At this stage of review and on the issue of legal sufficiency," we are not concerned with whether the State proved beyond a reasonable doubt that Mr. Palmer was driving while under the influence of alcohol. *Harding v. State*, 223 Md. App. 289, 300 (2015). "That is not our call. Indeed, only the jurors could answer that question (which they did with their verdict of guilty)." *Id.* Instead, we ask "whether the State established a reasonable likelihood" that Mr. Palmer had been driving while under the influence of alcohol, "enough to permit the jury to consider that possibility." *Id.* "We must give

deference to all reasonable inferences that the fact-finder draws, regardless of whether the appellate court would have chosen a different reasonable inference." *Hall v. State*, 233 Md. App. 118, 137 (2017) (internal marks and citations omitted). Furthermore, "[a]n inference 'need only be reasonable and possible; it need not be necessary or inescapable.'" *Neal v. State*, 191 Md. App. 297, 318 (2010) (quoting *Smith v. State*, 374 Md. 527, 539 (2003)).

I disagree with the Majority's reliance on out-of-state case law and, pursuant to the Maryland case law detailed below, I would hold that the evidence was sufficient for a jury to conclude that Mr. Palmer was under the influence of alcohol *while* driving. Therefore, I respectfully dissent from Part C.2 of the Majority opinion. I otherwise join in full.

The Majority cites to *Thomas v. State*, 277 Md. 314 (1976), which, as much of the Maryland case law does, focused on whether there was sufficient evidence that the defendant had driven the vehicle. *Thomas* is both factually and legally distinguishable from the present case. In *Thomas*, like here, there was no evidence of how long the vehicle had been parked before officers arrived at the scene; unlike here, however, there was also no evidence that the vehicle was even operable in the first instance. *Id.* at 325. Furthermore, as explained in *Gore v. State*, the statutory definition of "drive" in this context is broader now than it was when *Thomas* was decided. 74 Md. App. 143, 149-50 (1988). Accordingly, *Thomas* is not binding on the question before us.

In *Gore*, like here, there was no direct evidence of how long the vehicle had been parked or when the appellant had consumed alcohol:

2

On cross-examination, the officer acknowledged that he did not see appellant drive the car; that he had no knowledge as to how long the car had been on the 7–11 lot, nor how it came to be there; that he did not check under the hood to determine if the car had an engine or transmission; and that the car could not be started with the key in the "on" position in the ignition and the gear selector in "drive". Appellant also established on cross-examination that the officer did not know when appellant consumed the alcohol he admitted to drinking and that no alcohol was found in the car.

*Id.* at 145. Under those facts, as well as the fact that "the engine was warm to the touch[,]" this Court held that the evidence was sufficient to support a rational inference that Mr. Gore had driven the vehicle while under the influence of alcohol. *Id.* at 149.

This question of evidentiary sufficiency was again addressed by this Court in *Dukes v. State*, where a vehicle was seen by an officer at approximately 4:47 a.m., "stopped in the right turn lane with its headlights on, but they were dim." 178 Md. App. 38, 39 (2008). The vehicle had been in the same location when the officer had passed by thirty minutes earlier and there was no additional evidence of when the vehicle had been driven to that location. *Id.* The appellant was asleep in the driver's seat and the keys were on the floor of the vehicle. *Id.* The officer smelled alcohol on his breath, he was slurring his words, and he failed the field sobriety tests. *Id.* at 40. This Court held that "the fact that appellant was intoxicated and asleep in the driver's seat of a vehicle that was stopped *in the roadway*, with its lights on, is powerful circumstantial evidence that appellant drove the vehicle to that location while intoxicated." *Id.* at 52.

"In terms of the circumstances that may give rise to an inference that the car has recently been driven, a key factor is that of where the car is resting when it is first observed

3

by the police." *Harding*, 223 Md. App. at 303-04 (holding there was sufficient evidence to support a conviction for driving under the influence of alcohol when officers responded to an emergency call and found the vehicle "straddling the sidewalk with its nose in the abutting bushes as its engine was emitting smoke and radiator fluid was pouring out onto the sidewalk.").

In *Bryant v. State*, the Court addressed whether there was sufficient evidence despite there being a time gap of approximately one hour between when the vehicle had been driven and when officers arrived at the scene. 142 Md. App. 604, 610 (2002). The vehicle in question was parked in a driveway and there was conflicting testimony regarding whether the appellant had consumed alcohol inside the house after arriving at that address. *Id.* at 623. The Court stated that it was within the discretion of the factfinder to assess the credibility of the various evidence and held that the circumstantial evidence permitted the inference that the appellant had violated the drunk driving statute. *Id.* at 625-26.

Reading the facts in the light most favorable to the State, we have the following circumstance before us. Officers arrived on the scene of a single-vehicle accident at approximately 11:30 p.m. Mr. Palmer's girlfriend testified that she had been with Mr. Palmer until around 8:00 p.m. and she did not see him drink any alcohol. Trooper Barfield detected the odor of alcohol on Mr. Palmer and noted that his speech was "slow and lethargic," and his eyes were "bloodshot and glassy." A small bottle of Fireball whiskey was found outside of the car and Mr. Palmer refused to submit to a field sobriety test. Mr. Palmer's shoes were wet and grassy, and Trooper Bynum stated that he could still feel heat

4

coming off the hood of the car. Additionally, the vehicle was located "completely off the roadway in a ditch and grass area approximately ten feet from the roadway." The vehicle had a small amount of damage, and a speed limit sign was "completely down on the ground and pulled out of the ground bent."

Similarly to *Gore* and *Dukes*, there is no direct evidence in the record of when the vehicle had been driven. Unlike those cases, however, we do know that the accident occurred within an approximate window of three-and-a-half hours. While the time gap, and the bottle of Fireball whiskey found at the scene, make it possible that Mr. Palmer became intoxicated after the accident, like in *Bryant*, it is a question for the jury to resolve. If the evidence was sufficient to support a conviction when the State presented no evidence of a specific timeline, then certainly the evidence should be sufficient to "permit the jury to consider th[e] possibility" that Mr. Palmer was driving under the influence of alcohol when the State presented evidence to support a time gap of, at most, three-and-a-half hours. *Harding*, 223 Md. App. at 300. The inference that Mr. Palmer was under the influence of alcohol while driving "'need only be reasonable and possible; it need not be necessary or inescapable.'" *Neal*, 191 Md. App. at 318 (quoting *Smith*, 374 Md. at 539).

Furthermore, the fact that the vehicle was found off the roadway in a ditch, and the speed limit sign was bent over, is circumstantial evidence from which a jury could infer that the driver was under the influence of alcohol while driving. *See Harding*, 223 Md. App. at 303-04; *Dukes*, 178 Md. App. at 52.

5

In light of Mr. Palmer's state when officers arrived, the location of the vehicle off the road, and the fact that the hood of the vehicle was still warm, I would hold that there is sufficient evidence to support a rational inference that Mr. Palmer was under the influence of alcohol when he drove the vehicle. As such, I respectfully dissent.